```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:                                          :
                                                :
WATERSCAPE RESORT LLC,                          :   Chapter 11
                                                :   Case No. 11-11593(SMB)
                        Debtor.                 :
-------------------------------------------------------X
PAVARINI MCGOVERN, LLC,                         :
                                                :
                        Plaintiff,              :   Adv. Proc. No. 11-02248
        -- against --                           :
                                                :
WATERSCAPE RESORT LLC, et al.                   :
                                                :
                        Defendants.             :
-------------------------------------------------------X
```

## MEMORANDUM DECISION AND ORDER
## QUASHING SUBPOENA FOR INDIVIDUAL TAX RETURNS

**A P P E A R A N C E S:**

BARTON BARTON & PLOTKIN LLP
*Attorneys for Plaintiff*
420 Lexington Avenue
New York, NY 10170

      Eric W. Sleeper, Esq.
           Of Counsel


RICHARD J. MIGLIACCIO, ESQ.
*Attorney for Defendants Salim Assa a/k/a Solly Assa*
  *and Ezak Assa*
410 Park Avenue, Suite 1630
New York, New York 10022

      Richard J. Migliaccio, Esq.
           Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

Between 2007 and 2011, Michael Jast, CPA and his accounting firm, Skwiersky, Alpert & Bressler LLP (the "Subpoenaed Parties") rendered professional accounting and tax services to several affiliated parties and non-parties (collectively, the "Targets") to this adversary proceeding.  The plaintiff, Pavarini McGovern LLC ("Pavarini") served the Subpoenaed Parties with a subpoena seeking documents pertaining to certain real estate improvement projects in which the Targets were involved.  (ECF Doc. # 112, Ex. B.)[1]  The projects included the real estate owned by the debtor, Waterscape Resort LLC ("Waterscape").

The Targets moved to quash the subpoena.  (ECF Doc. # 112.)  Following a hearing, the Court directed the Subpoenaed Parties to produce the documents relating to the non-individual Targets to Pavarini, and reserved decision with respect to the individual Targets, defendants Salim Assa and Ezak Assa (the "Assas").[2]  The Assas argue that the documents are protected by the marital privilege, and have also asserted their personal financial information should remain private. [3]  The Court instructed the Assas to file a privilege log within seven days and directed the Subpoenaed Parties to deliver the Assa documents to my chambers for *in camera* review. (*See Counter Order Modifying Subpoena*, Jan 9. 2013 (ECF Doc. # 132).)

Upon receipt, the Court reviewed the Assa documents *in camera*.  Although the Assas did not carry their burden on the issue of the marital privilege, their motion to quash the subpoena on privacy grounds is granted.

---

[1]  "ECF Doc." refers to the docket in this adversary proceeding; "Case No. 11-11593 ECF Doc." refers to the docket in the main bankruptcy case.

[2]  Salim Assa  is the Manager of Waterscape, (*Local Rule 1007-2 Declaration in Support of First-Day Pleadings,* dated Apr. 5, 2011, at ¶ 24 (Case No. 11-11593 ECF Doc. # 2))**,** and Ezak Assa is Waterscape's Executive Vice President.  (*Id.* at ¶ 1.)

[3]  The non-individual Targets had also raised privacy objections but the Court overruled those objections.

2

## BACKGROUND

The background to this bankruptcy and the issues involving Waterscape and Pavarini are discussed at length in the Court's prior decision, *Pavarini McGovern, LLC v. Waterscape Resort LLC (In re Waterscape Resort LLC)*, 483 B.R. 601 (Bankr. S.D.N.Y. 2012). I assume familiarity with that decision, and highlight the facts relevant to the current dispute.

In 2007, Waterscape embarked on a plan to construct a hotel and condominium building in Manhattan. Waterscape hired Pavarini as its general contractor, and Pavarini, in turn, hired subcontractors to do the work. The project was funded with loans from U.S. Bank, National Association and USB Capital Resources, Inc. f/k/a USB Capital Funding Corp. (collectively "US Bank").

In simplest terms, Pavarini was required to submit monthly requisitions to Waterscape, and during the life of the project, Pavarini submitted forty-two such requisitions. Waterscape, in turn, submitted forty draw requests to US Bank based on Pavarini's requisitions. US Bank funded all or part of the forty draw requests, but Waterscape did not turn over the entire funded portion to Pavarini. Pavarini contends that the shortfall, $4,458,616.97 (the "Shortfall"), was diverted in violation of Article 3-A of the New York Lien Law.

On June 10, 2011, Pavarini commenced this adversary proceeding. (*See Complaint*, dated June 10, 2011 (ECF Doc. # 1).)[4] Count II alleged, *inter alia*, that the "Waterscape Defendants" diverted the Shortfall, and Pavarini sought to recover the Shortfall for the benefit of Pavarini and the subcontractors. The subpoena at issue concerns this claim. According to

---

[4] "ECF" refers to the docket in this adversary proceeding.

Pavarini, it is seeking to trace the diversion of the Shortfall, and argues that the documents sought from the Subpoenaed Parties are relevant to that inquiry.

The Subpoenaed Parties prepared the individual joint tax returns for the Assas and their respective spouses. The documents I reviewed *in camera* consist either of the final tax or amended tax returns filed with the taxing authorities or the draft tax returns. All of the documents were apparently prepared by the Subpoenaed Parties. The voluminous production contains only a few references to Waterscape indicating that Waterscape generated income or losses attributed to Gemstone 45 LLC ("Gemstone") for tax purposes,[5] and one or both Assas claimed pass-through additions to or subtractions from their own income based on Gemstone's Waterscape-related income or loss.

## DISCUSSION

### A.    The Marital Privilege

Rule 45(c) of the Federal Rules of Civil Procedure allows the court to modify or quash a subpoena in appropriate circumstances.[6] As the subpoena concerns a state law claim for

---

[5] Gemstone holds a Class B and C Member Interest in Waterscape. (*See Rule 1007(A)(1) and 7007.1 Corporate Ownership Statement*, dated Apr. 5, 2011 (Case No. 11-11593 ECF Doc # 1, at 7-8 of 41).)

[6] Rule 45(c)(3) states in pertinent part:

**(3) *Quashing or Modifying a Subpoena.***

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

. . .

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information . . . .

4

diversion of Article 3-A trust funds, New York's privilege law applies. FED. R. EVID. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); *Atl. Richfield Co. v. Triad Petroleum, Inc.*, 120 F.R.D. 471, 472 (S.D.N.Y.1988); *accord In re Donald Sheldon & Co., Inc.*, 191 B.R. 39, 47 (Bankr. S.D.N.Y. 1996). As the parties invoking the marital privilege, the Assas have the burden of showing that it applies. *SEC v. Reserve Mgmt. Co. (In re Reserve Fund Secs. & Derivative Litig.)*, 275 F.R.D. 154, 158 (S.D.N.Y. 2011).

New York recognizes that confidential communications between spouses are privileged. *See* N.Y.C.P.L.R. ("CPLR") § 4502(b) (McKinney 2007) ("A husband or wife shall not be required, or, without consent of the other if living, allowed, to disclose a confidential communication made by one to the other during marriage.").[7] The privilege is intended to foster domestic harmony. *Poppe v. Poppe*, 144 N.E.2d 72, 73 (N.Y. 1957) ("Designed to protect and strengthen the marital bond, it encompasses only those statements that are 'confidential,' that are induced by the marital relation and prompted by the affection, confidence and loyalty engendered by such relationship.") (Fuld, J.). Because the communication must be confidential, it will not attach to a communication made in the presence of or revealed to a third party. *People v. Thomas*, 733 N.Y.S.2d 231, 232 (N.Y. App. Div. 2001) (privilege did not attach to letter from husband to wife composed in presence of 13-year-old stepdaughter and left in plain view); *People v. La Planche*, 598 N.Y.S.2d 877, 877 (N.Y. App. Div. 1993) ("[A]lthough those communications were presumably privileged when made ( *see,* CPLR 4502[b] ), the privilege was lost because the substance of those communications was revealed to a third party."); *People*

---

[7] New York also recognizes a limited testimonial privilege relating to actions for adultery. *See* CPLR §§ 4502(a), 4512. The testimonial privilege is not implicated by the Assas' motion.

5

*v. Scalise*, 421 N.Y.S.2d 637, 638 (N.Y. App. Div. 1979) (no privilege where statements made in the presence of third parties).

The Assas failed to sustain their burden of showing that the marital privilege attached to their communications with the Subpoenaed Parties. First, they failed to show that the materials produced by the Subpoenaed Parties for *in camera* review contain any communications between the Assas and their respective spouses. Their blanket assertion of privilege in their privilege log does not identify any specific communication, and is insufficient as a matter of law. Second, to the extent the documents contain or reflect marital communications, they were delivered by the Assas to a third party, their accountant, and are not confidential.[8] Moreover, the information was delivered for the purpose of preparing and filing tax returns with public entities.

**B.      Privacy**

The Court may quash or modify a subpoena to protect an individual against the disclosure of personal, private financial information to avoid undue annoyance, embarrassment or oppression. *Sierra Rutile Ltd. v. Katz*, No. 90 Civ. 4913 (JFK), 1994 WL 185751, at *2 (S.D.N.Y. May 11, 1994); *see* FED. R. CIV. P. 26(c)(1). While tax returns are not immune from civil discovery, "courts, as a matter of policy, should be cautious in ordering their disclosure." *United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 119 F.R.D. 625, 627 (E.D.N.Y. 1988). "Before ordering the production of tax returns in civil litigation, the court must be satisfied that (1) the returns are relevant to the subject matter of the action; and (2) there is a compelling need for the returns because the information contained therein is not available

---

[8]      Although not raised by the Assas, New York does not recognize an accountant-client privilege. *Asian Vegetable Research & Dev. Ctr. v. Institute of Int'l Educ.*, 94 Civ. 6551 (RWS), 1995 WL 491491, at *8 n. 4 (S.D.N.Y. Aug. 17, 1995); *First Interstate Credit Alliance, Inc. v. Arthur Andersen & Co.*, 541 N.Y.S.2d 433, 434 (N.Y. App. Div. 1989).

from other sources." *Patrick Carter Assocs., Inc. v. Rent Stabilization Ass'n of N.Y.C., Inc.*, No. 89 Civ. 7716 (WCC), 1992 WL 167387, at *2 (S.D.N.Y. June 26, 1992); *accord United States v. Rajaratnam*, 753 F. Supp.2d 317, 324 (S.D.N.Y. 2011).

Here, the tax returns are relevant to the subject matter of the diversion claim to the extent they show that the Assas or any other non-trust fund beneficiary received trust assets from Waterscape. However, there is no compelling need to disclose the Assas' individual tax information to Pavarini. The documents do not show that the Assas received trust funds from Waterscape. Furthermore, while the documents include a few references to pass through additions to and subtractions resulting from Waterscape-related income or losses attributed to Gemstone for tax purposes, information regarding transfers from Waterscape to Gemstone is presumably obtainable from Gemstone's records, which the Court ordered to be produced, or from Waterscape's general ledger. Accordingly, the subpoena is quashed as to the Assas.

So ordered.

Dated: New York, New York
       January 28, 2014

                                          /s/ *Stuart M. Bernstein*
                                          STUART M. BERNSTEIN
                                          United States Bankruptcy Judge