UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                    :
                                                          :
WATERSCAPE RESORT LLC,                                    :    Chapter 11
                                                          :    Case No. 11-11593 (SMB)
                                         Debtor.          :
------------------------------------------------------------X
PAVARINI MCGOVERN, LLC,                                   :
                                                          :
                        Plaintiff,                        :    Adv. Proc. No. 11-02248 (SMB)
                                                          :
                                                          :
               -against-                                  :
                                                          :
WATERSCAPE RESORT LLC, *et al.*                           :
                                                          :
                        Defendants.                       :
------------------------------------------------------------X

**MEMORANDUM DECISION REGARDING WATERSCAPE'S
MOTION TO DISCHARGE LIENS OF CLASS 3 CREDITORS**

**A P P E A R A N C E S:**

MEDINA LAW FIRM LLC
The Chrysler Building
405 Lexington Avenue, 7th Floor
New York, NY 10174

    Eric S. Medina, Esq.
        Of Counsel

   – and –

RICHARD J. MIGLIACCIO, ESQ.
410 Park Avenue – 16th Floor
New York, NY 10022

*Attorneys for Defendant Waterscape Resort LLC*

BARTON LLP
420 Lexington Avenue
New York, NY 10170

    Eric W. Sleeper, Esq.
        Of Counsel

*Attorneys for Plaintiff Pavarini McGovern, LLC*

LAZARUS & LAZARUS, P.C.
240 Madison Avenue
New York, NY 10016

  Harlan M. Lazarus, Esq.
    Of Counsel

*Attorneys for Defendants Salim Assa a/k/a Solly Assa and Ezak Assa.*

TESSER & COHEN
946 Main Street
Hackensack, NJ 07601

  Steven Cohen, Esq.
    Of Counsel

*Attorneys for Defendant John Civetta & Sons, Inc.*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

  The debtor Waterscape Resort LLC ("Waterscape") has moved to discharge certain mechanics liens filed against its property and for related relief detailed below. The motion is opposed by Pavarini McGovern, LLC ("Pavarini"), Waterscape's general contractor, and one of Pavarini's subcontractors, John Civetta & Sons, Inc. For the reasons that follow, the motion to discharge the liens as a matter of law is denied, but Pavarini is directed to specifically perform its obligations under the parties' contract.

## BACKGROUND

  The background to this dispute is discussed in *In re Waterscape Resort LLC*, Case No. 11-11593(SMB), 2014 WL 1389762 (Bankr. S.D.N.Y. Apr. 9, 2014). I assume familiarity with that decision and discuss the facts required to explain this opinion.

Waterscape owns property located in Manhattan. On June 28, 2007, it entered into a Construction Management Agreement ("CMA")[1] with Pavarini as the Construction Manager to build a 45-story hotel and condominium building on its property. Pavarini hired subcontractors to do the actual work. The CMA provided that Pavarini would receive progress payments through a requisition procedure based on the work performed by its subcontractors. Any contract disputes were to be submitted to the Dispute Resolution Board ("DRB"), the specialized ADR forum selected by the parties in the CMA. (*See* CMA Art. 19.5.) In September 2010, when the Project was nearly complete, Waterscape discharged Pavarini as Construction Manager and purported to terminate the CMA. Pavarini contended that Waterscape had wrongfully withheld progress payments, owed Pavarini over $10 million, and the parties engaged in dispute resolution before the DRB.

Waterscape commenced this chapter 11 case on April 5, 2011. On June 9, 2011, Pavarini filed a proof of secured claim in the amount of $10,833,132.59, plus interest, which corresponded to its filed mechanics lien. This sum included the amounts that Pavarini owed to the subcontractors it had hired. Many of the subcontractors also filed their own mechanics liens. As a result, approximately $20 million in mechanics liens were filed against Waterscape's property although roughly half that amount, at most, was actually owed.

Waterscape confirmed the *Debtor's Second Amended Plan of Reorganization* (the "*Plan*") on July 21, 2011. (*See Order Approving Disclosure Statement and Confirming Plan of Reorganization*, dated July 21, 2011 (ECF Main Doc. # 128).) The *Plan* placed the Pavarini and

---

[1] The CMA is annexed as Exhibit 2 to the *Affidavit of William Frederick in Support of Pavarini McGovern, LLC's Motion for Partial Summary Judgment*, filed June 25, 2012 (ECF Doc. # 35). "ECF Doc." refers to the docket in this adversary proceeding; "ECF Main Doc." refers to the docket in the main bankruptcy case.

3

subcontractors' overlapping mechanics liens and trust fund claims under Article 3-A of the New York Lien Law in Class 3, (*Plan* at § 4.3), and Waterscape and its secured lender agreed to carve out $11 million from the hotel sale proceeds to fund an $11 million Trust Fund Account to pay the Class 3 claims. (*Id.* §§ 4.1(b), 5.3.) Pavarini's mechanics lien was deemed released and discharged upon the funding of the Trust Fund Account, (*id.* at § 5.3), but the *Plan* did not affect the subcontractors' mechanics liens.

Each Class 3 claim was deemed to be disputed. Many actions involving Waterscape, Pavarini and the subcontractors were already pending before the state court and the DRB, and the intent of the *Plan* was to allow Pavarini and the subcontractors to continue to liquidate the allowed amounts of their claims in the non-bankruptcy *fora*. Once a claim was liquidated pursuant to a settlement or "Final Order," the claim became an allowed claim subject to payment from the Trust Fund Account or Waterscape's own assets. The original definition of "Final Order" was limited to an order rendered by a forum of competent jurisdiction as to which the time to appeal had expired, no appeal was pending and the order had become conclusive and was in full force and effect.

This definition did not suit Pavarini. The CMA provided that the amount of the Final Payment as determined by the DRB was due prior to any appeal or review process. At Pavarini's insistence, the Plan was modified to state that "each alleged Class 3 Claim shall be determined by settlement or Final Order in the ordinary course in a court, the Court, *Dispute Resolution Board ("DRB")* or other dispute resolution forum of competent jurisdiction pursuant to the parties' contracts and applicable laws and procedures." (*Plan* § 4.3(b) (emphasis added).) As a result of the change, Waterscape was obligated to satisfy Pavarini's claim once the DRB

4

rendered its Final Accounting that reflected the disposition of all of the claims before it, and prior to any appeal or review process.

On March 11, 2014, after years of litigation, the DRB issued its 97-page Final Accounting in which it concluded that Waterscape owed Pavarini $8,093,655.92. On March 12, 2014, Pavarini moved to enforce the DRB's Final Accounting and direct payment of Pavarini's Class 3 Claim. By Order dated April 24, 2014, the Court granted that motion and Pavarini has been paid.

Following the payment, Waterscape made the pending motion. (*Waterscape Resort LLC's Motion for the Entry of an Order: (I) Discharging Liens of Class 3 Creditors; (II) Allowing Such Claims to the Extent of Payment to Pavarini McGovern LLC; (III) Deeming Such Claims Satisfied; and (IV) Dismissing All Remaining Claims Asserted by Pavarini McGovern, LLC*, dated May 5, 2014 ("*Motion*") (ECF Doc. # 173-1).) The *Motion* seeks an order discharging all mechanics liens filed by Class 3 creditors and allowing their claims to the extent of the payment to Pavarini. The *Motion* also seeks to compel Pavarini to discharge the mechanics liens in accordance with the provisions of the CMA, or provide proof that they have been satisfied. Finally, Waterscape seeks to dismiss a punitive damage claim that Pavarini has moved for leave to assert by separate motion in this adversary proceeding against Waterscape and its managing member, the defendant Salim Assa a/k/a Solly Assa.

## DISCUSSION

**A.      Discharge of Mechanics' Liens Under New York Lien Law**

Under New York Lien Law, a subcontractor may assert a lien against property regardless of whether privity exists with the owner. N.Y. LIEN LAW § 3[2]; *accord Key Mech., Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 122 (2d Cir. 2003). The subcontractor's lien "shall not be for a sum greater than the sum earned and unpaid on the [prime] contract at the time of filing the notice of lien, and any sum subsequently earned thereon." N.Y. LIEN LAW § 4(1)[3]; *accord BDC 56 LLC*, 330 F.3d at 122; *SMI Bldg. Sys., LLC v. W. 4th St. Dev. Group, LLC*, 83 A.D.3d 687, 688 (N.Y. App. Div. 2011). The right to recover from the owner is derivative of the general contractor's rights against the owner, and if the general contractor is not owed anything more under its contract with the owner, the subcontractor cannot recover. *Peri Formwork Sys., Inc. v. Lumbermen's Mut. Cas. Co.*, 975 N.Y.S.2d 422, 425-26 (N.Y. App. Div. 2013). The purpose of the rule is to limit the owner's liability to the amount it agreed to pay. *Id.* at 426.

Despite the derivative nature of the subcontractor's mechanics lien, the owner's payment in full of all amounts owed to the general contractor does not *ipso facto* discharge a

---

[2]     N.Y. LIEN LAW § 3 (McKinney 2007) provides in relevant part:

A . . . subcontractor . . . who performs labor or furnishes materials for the improvement of real property with the consent . . . of the owner thereof, or of his agent, contractor or subcontractor, . . . . shall have a lien for the principal and interest, of the value, or the agreed price, of such labor, . . . or materials upon the real property improved or to be improved and upon such improvement, from the time of filing a notice of such lien as prescribed in this chapter.

[3]     N.Y. LIEN LAW § 4(1) (McKinney 2007) provides in relevant part:

If labor is performed for, or materials furnished to, a contractor or subcontractor for an improvement, the lien shall not be for a sum greater than the sum earned and unpaid on the contract at the time of filing the notice of lien, and any sum subsequently earned thereon. In no case shall the owner be liable to pay by reason of all liens created pursuant to this article a sum greater than the value or agreed price of the labor and materials remaining unpaid, at the time of filing notices of such liens, except as hereinafter provided.

6

subcontractor's mechanics lien. *101 Park Ave. Assocs. v. Trane*, 470 N.Y.S.2d 392, 393 (N.Y. App. Div.), *aff'd*, 465 N.E.2d 359 (N.Y. 1984) is instructive. There, the owners withheld payment, and the general contractor filed a mechanics lien for an amount that included the unpaid charges submitted by a subcontractor (Trane). The owners posted a bond to discharge the general contractor's lien, and Trane filed its own mechanics lien. The Supreme Court granted the owner's application to discharge Trane's mechanics lien, reasoning that the subcontractor must satisfy its lien out of whatever the owner owes to the general contractor. *Id.* at 392.

The Appellate Division reversed. The majority concluded that the deposit did not affect Trane's mechanics lien, concluding that the Supreme Court had confused an unpaid materialman's right to a mechanics lien with the rules limiting the funds available to discharge the lien. *Id.* at 393. The minority disagreed, stating that the result was unfair. In its view, the mechanics lien against the owner's real property should be discharged and attach to the bond which secured the debt. Otherwise, "the owner is unjustifiably burdened with the cost of posting successive undertakings to secure amounts for materials that were secured by previous undertakings." *Id.* at 394. The Court of Appeals nevertheless affirmed the Appellate Division, noting that "Trane, as an unpaid subcontractor, has an unqualified right to a mechanic's lien upon the improved real property." *101 Park Ave. Assocs. v. Trane*, 465 N.E.2d 359, 359 (N.Y. 1984) (citing N.Y. LIEN LAW § 3).

Under the rule established in *101 Park Avenue Associates*, the Final Payment to Pavarini did not discharge the unpaid subcontractors' mechanics liens, even if the effect of the payment precludes the subcontractors from collecting anything more from Waterscape. Moreover, as Pavarini points out, the DRB Final Accounting is still subject to review, and if Pavarini appeals, Waterscape may ultimately owe it more. In that event, the subcontractors may still have

7

derivative rights against Waterscape that they can enforce through the foreclosure of their mechanics liens against Waterscape's real property.

Nor does the Final Payment discharge the mechanics liens under New York Lien Law § 20. A mechanics lien may be discharged under § 20 by the deposit of money "with the county clerk, in whose office the notice of lien was filed."[4] The payment discharges the lien as against the real property and transfers it to the deposit. *LaPointe v. J.T.T. Contractors, Inc.*, 545 N.Y.S.2d 388, 389 (N.Y. App. Div. 1989); *Frank Salz and Sons, Inc. v. Lehr Constr. Corp.*, 477 N.Y.S.2d 559, 562 (N.Y. Sup. Ct. 1984). Waterscape did not deposit money with the county clerk, and instead, paid Pavarini directly pursuant to the DRB decision. Accordingly, New York Lien Law § 20 does not apply, and more generally, the Final Payment did not discharge the subcontractors' mechanics liens as a matter of law.[5]

---

[4]     N.Y. LIEN LAW § 20 (McKinney 2007) provides in relevant part:

    A lien . . . may be discharged after the notice of lien is filed at any time before an action is commenced to foreclose such lien, by depositing with the county clerk, in whose office the notice of lien is filed, a sum of money equal to the amount claimed in such notice, with interest to the time of such deposit . . . After action to foreclose the lien is commenced it may be discharged by a payment into court of such sum of money, as, in the judgment of the court or a judge or justice thereof . . . will be sufficient to pay any judgment which may be recovered in such action. Upon any such payment, the county clerk shall forthwith enter upon the lien docket and against the lien for the discharge of which such moneys were paid, the words "discharged by payment."

[5]     The authorities cited by Waterscape in its reply in support of the argument that the Final Payment discharged the mechanics liens are distinguishable. They dealt with the effect under Lien Law of a payment into court, *Gen. Fire-Proof Door Corp. v. Citibank, N.A.*, 544 F. Supp. 191, 193 (S.D.N.Y. 1982) (payment into court discharged liens pursuant to N.Y. LIEN LAW § 55), or to the clerk. *Frank Salz and Sons, Inc. v. Lehr Constr. Corp.*, 477 N.Y.S.2d 559, 562 (N.Y. Sup. Ct. 1984) ("I find, pursuant to Sections 19 and 20 of the Lien Law, that the shift from a real property lien to a cash deposit lien did not modify the requirement that an action to foreclose a lien must be commenced within one year of the filing of the notice of lien."); *Harlem Plumbing Supply Co. v. Handelsman*, 337 N.Y.S.2d 329, 330 (N.Y. App. Div. 1972) (deposit pursuant to New York Lien Law § 20 discharged the mechanics lien and shifted it to the fund). These statutory provisions do not apply to a payment by the owner to the general contractor, and Waterscape has not pointed to a comparable provision of the Lien Law dealing with that type of payment.

8

**B.      Discharge of Mechanics Liens Under the *Plan***

Waterscape also contends that the *Plan* dealt with all of the claims asserted by Pavarini and the subcontractors, and reasons that the payment to Pavarini satisfied the subcontractors' mechanics liens. (*Motion* ¶¶ 24, 25.) The *Plan* expressly discharged Pavarini's mechanics lien but did not address the fate of the subcontractors' mechanics liens should Waterscape pay Pavarini. Instead, the *Plan* provided that Waterscape must pay the subcontractors' mechanics lien/trust fund claims once they were liquidated by a Final Order. Accordingly, the *Plan* does not provide a basis to discharge the subcontractors' mechanics liens as a result of the Final Payment to Pavarini.

**C.      Discharge of Mechanics Liens Under the CMA**

Finally, Waterscape seeks relief under the provisions of the CMA. CMA Article 4.24.1 requires Pavarini to take steps to discharge a mechanics lien under certain circumstances. It states:

> If, at any time, a lien of any kind is filed against the Project by Construction Manager, a Trade Contractor or anyone claiming through Construction Manager or a Trade Contractor for Work performed or for materials, equipment or supplies furnished in connection with the Work for which: (1) Construction Manager previously has been paid by Owner, or (2) Owner has not made payment because of a bona fide dispute between the Owner and Trade Contractor, with Construction Manager supporting Owner's position, then Construction Manager, within five (5) days after written notice from Owner, shall commence to cause such lien to be cancelled and discharged of record by bonding or otherwise, and thereafter diligently pursue such cancellation or discharge which must be accomplished within thirty (30) days thereof. Costs arising out of bonding Trade Contract liens as required under clause (2) of this section are a permissible Contingency expense.

Waterscape has failed to satisfy either condition under CMA Article 4.24.1. First, Waterscape did not "previously" pay Pavarini for the work and materials furnished by the mechanics lienors at the time the liens were filed. Second, although Waterscape alleges that

9

Pavarini supported it through Pavarini's assertion of millions of dollars of back charges against its subcontractors for defective, non-conforming or incomplete work, Waterscape's "proof" is contained in an off-hand remark in its reply memorandum. (*See Waterscape Resort LLC's Reply in Further Support of its Motion: (I) Discharging Liens of Class 3 Creditors; (II) Allowing Such Claims to the Extent of Payment to Pavarini McGovern LLC; (III) Deeming Such Claims Satisfied; and (IV) Dismissing All Remaining Claims Asserted*, dated May 27, 2014 ("*Waterscape Reply*"), at ¶ 8 & n.5 (ECF Doc. # 179).) Waterscape did not supply any evidence that it had a bona fide dispute with a subcontractor, or that Pavarini's assertion of back charges against subcontractors related to Waterscape's disputes with the subcontractors as opposed to Pavarini's disputes with the subcontractors.[6] In short, Waterscape failed to demonstrate that the conditions precedent to Pavarini's obligation to discharge liens under CMA Article 4.24.1 occurred.

In its reply memorandum,[7] Waterscape also invoked CMA Article 12.7.3. (*Waterscape Reply* ¶ 7.) This provision is not limited to mechanics liens, and requires Pavarini to confirm that all of the work-related obligations have been paid or otherwise satisfied "in exchange for Final Payment":

> In exchange for Final Payment, Construction Manager shall turn over to Owner: (1) an affidavit in form and substance satisfactory to Owner's Lender, stating that all payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which Owner or the property might in any way be responsible, have been paid or otherwise satisfied; . . . (3) if required by the Owner, other data establishing payment or satisfaction of all Construction Manager's obligations, including, but not limited to, receipts, Final Waivers and Releases of Liens in the

---

[6] This does not mean that Pavarini's back charge claims against subcontractors equate to "supporting Owner's position" within the meaning of the CMA. The CMA is ambiguous on this point. Nevertheless, the paucity of proof supplied by Waterscape makes it unnecessary to resolve the ambiguity.

[7] Although Waterscape mentioned CMA Article 12.7.3 first the first time in its reply memorandum, Pavarini did object and addressed the applicability of the provision during oral argument.

10

>form set forth in Exhibit l from Construction Manager and all Trade Contractors and major Vendors. . . .

Pavarini argues that it is not required to perform the obligations imposed under CMA Article 12.7.3 (or CMA Article 4.24.1 which has already been addressed) because Waterscape committed a material breach by wrongfully terminating the CMA, and the material breach excused Pavarini from further performance. While Pavarini's statement of the law is correct as far as it goes, it is also the law that the non-breaching party cannot elect to continue to demand the benefits under the breached contract while ignoring its corresponding obligations. *See ARP Films, Inc. v. Marvel Entm't Group, Inc.*, 952 F.2d 643, 649 (2d Cir. 1991). Following Waterscape's breach, Pavarini invoked the contractual ADR procedures. Furthermore, it insisted on changes to the *Plan* that equated a DRB resolution to a Final Order for purposes of allowance and payment. It succeeded in arguing that the CMA required Waterscape to satisfy immediately the $8 million obligation imposed under the Final Accounting, and successfully contended that the CMA prohibited Waterscape from seeking review of or appealing from the Final Accounting until it made the payment. Thus, Pavarini affirmed the ADR provisions of the CMA, and in particular, the effect of the provisions relating to the Final Payment.[8] Having achieved the bargained-for benefit, it is bound to perform the corresponding bargained-for obligation.

At oral argument, Pavarini also argued that any failure to comply with CMA Article 12.7.3 would constitute a breach of the CMA that Waterscape was required to submit to the DRB.[9] (Transcript of May 29, 2014 Hearing ("5/29 Tr."), at 13 (ECF Doc. # 181).) The

---

[8] It is also unreasonable to argue that the dispute resolution procedures did not survive the breach. They were intended to resolve situations in which Waterscape failed to pay Pavarini, and any non-payment of a material amount would constitute a material breach.

[9] Pavarini did not argue that CMA Article 12.7.3 was a condition to Final Payment but not a promise whose nonperformance would give rise to a claim for breach of the CMA. In other words, Pavarini did not assert that a failure to comply with CMA Article 12.7.3 might allow Waterscape to withhold the Final Payment, but did not

11

argument lacks merit. Pavarini never repudiated its obligations under CMA Article 12.7.3 prior to the Final Payment, and any breach occurred simultaneously with or subsequent to the Final Payment. The DRB lost its jurisdiction upon Final Payment. (CMA Art. 18.1.7 ("[T]he DRB shall continue in existence for the duration of the construction of the Project and through final payment.")); *accord Waterscape Resort, LLC v. Pavarini McGovern, LLC*, N.Y. Cty. Index No. 652035/10, bench decision at 3-5 (N.Y. Sup. Ct. Dec. 20, 2011) (concluding that Waterscape was required to submit claims to the DRB, and the DRB retained jurisdiction until final payment).[10] Hence, Waterscape could not have raised the claim before the DRB.

Here, Waterscape made the Final Payment as required by the CMA, and "in exchange for" the Final Payment, Pavarini must comply with CMA Article 12.7.3. How and when it will do so must await further proceedings. This conclusion is not inconsistent with the earlier determination that the Final Payment did not discharge the mechanics liens as a matter of New York law or under the *Plan*. It simply enforces the bargain that the parties made under the CMA, a bargain that leads to a different result than the law (or the *Plan*) might require.

### D. Pavarini's Punitive Damage Claim

Pending before the Court is a separate motion by Pavarini to amend its complaint to assert a claim for punitive damages based upon Waterscape's and Solly Assa's alleged diversion of trust funds. (*See Memorandum of Law in Support of Motion for Leave to Amend Complaint to Add a Demand for Punitive Damages*, dated Mar. 12, 2014 (ECF Doc. # 150).) Waterscape

---

impose an affirmative duty on Pavarini that Waterscape could require Pavarini to specifically perform. Furthermore, Pavarini did not maintain that Waterscape has an adequate remedy at law.

[10]    A copy of the Supreme Court's bench decision is annexed as Exhibit 1 to the *Affidavit of Eric McGovern in Support of Motion to Enforce the Dispute Resolution Board's Final Decision and Direct Payment of Pavarini McGovern, LLC's Class 3 Claim*, dated Mar. 12, 2014 (ECF Main Case Doc. # 560).

opposed the motion.  (*See Waterscape Resort LLC's: (I) Opposition to the Motion of Pavarini McGovern, LLC to Amend its Complaint to Assert Punitive Damages; and (II) Cross-Motion in Support of Motion to Amend Answer to Assert Counterclaim Against Pavarini McGovern, LLC for Willful Overstatement of Lien Pursuant to N.Y. Lien Law § 39*, dated Mar. 27, 2014 (ECF Doc. # 161-1).)  It argued that Pavarini had unduly delayed in asserting the claim, (*id.* ¶ 17), it would suffer undue prejudice if the claim were asserted, (*id.* ¶ 18), and the amendment was futile.  (*Id.* ¶¶ 19-24.)  The amendment was futile because the claim was asserted in a conclusory manner, law of the case precluded its assertion and the mere diversion of funds did not satisfy the standard for stating a claim for punitive damages.  (*Id.* ¶¶ 23-24.)

Waterscape argued in the *Motion* that the punitive damage claim was also moot.  According to Waterscape, the *Plan* provided no mechanism to pay the claim.  The "injunction provisions provided under section 1141" expressly barred payment because Pavarini's claims have "indefeasibly been paid in full," and the punitive damage claims do not fit within the "Exclusions to Releases" set forth in Article 1.4 of the *Plan*, "since the operative facts, concerning Waterscape's alleged diversion were known to Pavarini at the time of the confirmation of the Plan and were not included in the complaint in the above adversary proceeding,."  (*Motion* ¶ 26.)

At oral argument, I raised the possibility that the *Plan* may have discharged the punitive damage claim, and invited Waterscape to supplement its papers submitted in opposition to Pavarini's motion for leave to amend.  (5/29 Tr. at 22.)  Counsel for Waterscape never supplemented the papers, and the *Motion* fails to explain why the *Plan* precludes payment if the

13

punitive damage claim was not discharged.[11]  The Court will consider the other arguments made by Waterscape in opposition to Pavarini's motion to amend its complaint in a separate decision.

The Court has considered the parties' remaining contentions and concludes that they lack merit.  Settle order on notice.

Dated: New York, New York
       August 15, 2014

                                    /s/ *Stuart M. Bernstein*
                                    STUART M. BERNSTEIN
                                    United States Bankruptcy Judge

---

[11]  The *Plan* pays 100% to all creditors, whether they are members of Class 3 or Class 5, the unsecured class. Unless discharged, any punitive damage claim must be paid in full in accordance with the *Plan*.