UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
In re:                                      :
                                            :
WATERSCAPE RESORT LLC,                      :        Chapter 11
                                            :        Case No. 11-11593(SMB)
                        Debtor.             :
------------------------------------------------------X
PAVARINI MCGOVERN, LLC,                     :
                                            :
                        Plaintiff,          :        Adv. Proc. No. 11-02248
        -- against --                       :
                                            :
WATERSCAPE RESORT LLC, et al.               :
                                            :
                        Defendants.         :
------------------------------------------------------X

## MEMORANDUM DECISION GRANTING IN PART AND
## DENYING IN PART MOTIONS FOR LEAVE TO AMEND

**A P P E A R A N C E S :**

BARTON BARTON & PLOTKIN LLP
*Attorneys for Plaintiff*
420 Lexington Avenue
New York, NY 10170

        Eric W. Sleeper, Esq.
            Of Counsel

MEDINA LAW FIRM LLC
*Attorneys Defendant Waterscape Resort LLC*
The Chrysler Building
405 Lexington Avenue
Seventh Floor
New York, NY 10174

        Eric S. Medina, Esq.
        John Carlson, Esq.
            Of Counsel

LAZARUS & LAZARUS, P.C.
*Attorney for Defendants Salim Assa a/k/a Solly Assa*
  *and Ezak Assa*
240 Madison Avenue, 8ᵗʰ Floor
New York, New York 10016

      Harlan M. Lazarus, Esq.
        Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

The plaintiff Pavarini McGovern, LLC ("Pavarini") moves to amend its complaint to assert a claim for punitive damages against the Waterscape Defendants, defined below, and a separate claim against defendant Salim Assa ("Assa"), the debtor's principal, for punitive damages and other relief.  The gravamen of the proposed amendments is that Assa diverted to himself certain funds that the defendant Waterscape Resort LLC ("Waterscape"), the debtor in this case, held in trust for Pavarini under the New York Lien Law.  Waterscape opposes the motion, and Assa joins in the opposition.  The other Waterscape Defendants have remained silent.  In addition, Waterscape cross-moves to amend its answer to assert counterclaims against Pavarini sounding in fraud and willful exaggeration of its mechanic's lien.  Assa joins in the cross-motion and Pavarini opposes it.  For the reasons that follow, Pavarini is granted leave to amend Count II in the complaint to allege a claim for punitive damages, Waterscape is granted leave to assert a counterclaim for fraud, and the motions are otherwise denied.

## BACKGROUND

### A.    The Project

The background to this bankruptcy case is discussed at length in *Pavarini McGovern, LLC v. Waterscape Resort LLC* (*In re Waterscape Resort LLC*), 483 B.R. 601 (Bankr. S.D.N.Y. 2012) ("*Waterscape I*") and *In re Waterscape Resort LLC*, Case No. 11-11593, 2014 WL

1389762 (Bankr. S.D.N.Y. Apr. 9, 2014) ("*Waterscape II*").  I assume familiarity with those decisions and discuss the facts relevant to the current dispute.

Waterscape entered into a Construction Management Agreement ("CMA") with Pavarini pursuant to which Pavarini agreed to act as general contractor to construct a hotel and condominium building on Waterscape's property in Manhattan (the "Project").  Pavarini was responsible for managing and hiring subcontractors, and was entitled to a fee of 2.75% of the entire cost of construction exclusive of the fee itself.

The Project was funded with loans from U.S. Bank, National Association and USB Capital Resources, Inc. f/k/a USB Capital Funding Corp. (collectively "US Bank").  Pursuant to the loan agreements, US Bank agreed to make advances to Waterscape to fund Project costs based on monthly Draw Requests containing copies of, among other things, invoices of the Project contractors and vendors.  The Draw Requests had to be accompanied by a Draw Request Certification containing affirmative representations by Waterscape to US Bank that, among other things, the funds being drawn would be applied to fund the Project as specified in the requisition. Once approved, US Bank transferred the funds to Waterscape.

Disputes between Waterscape and Pavarini arose, and Waterscape unilaterally terminated the CMA in September 2010.  Pavarini filed a mechanic's lien on December 17, 2010 in the amount of $10,674,440.59.  (*See Claim no. 38–1,* dated June 8, 2011, Ex. C at ¶ 8.)  A later proof of claim revealed that Pavarini's secured claim consisted of two components: (a) $8,581,289 that it owed its subcontractors, (*Claim no. 38–3,* dated July 22, 2011, at 5, and (b) $2,251,783.59 that Pavarini contended Waterscape owed it under the CMA.  (*See Claim no.* 38–3, dated July 22, 2011, at 5.)  The subcontractors hired by Pavarini also filed mechanics' liens against the Property

for their unpaid work, and these liens, for the most part, duplicated the portion of the Pavarini

mechanic's lien that included their unpaid claims.

## B.    The Bankruptcy Case

### 1.    The Plan

Waterscape commenced this chapter 11 case on April 5, 2011, and filed its initial plan

and disclosure statement one month later.  The plan proposed to sell the hotel portion of the

Project free of liens, claims and interests, and pay all of the proceeds to US Bank.  Pavarini

objected complaining, *inter alia*, that hotel sale proceeds constituted trust funds under the New

York Lien Law, and the plan proposed to divert these trust funds (as well as future condominium

sale proceeds) to US Bank.

After numerous proceedings and significant plan amendments, Waterscape confirmed its

*Second Amended Plan of Reorganization* ("*Plan*") on July 21, 2011.  (*See Order Approving*

*Disclosure Statement and Confirming Plan of Reorganization,* dated July 21, 2011

("*Confirmation Order*") (ECF/Main Case Doc. # 128).)[1]  The *Plan* represented the product of

substantial negotiation and comment from Pavarini, US Bank and the Court.  It still

contemplated the sale of the hotel portion of the Project free and clear of all liens, claims and

interests.  (*See Confirmation Order* at ¶ 18.)  However, the *Plan* carved out $11 million from the

hotel sale proceeds and used the carve out to fund a Trust Fund Account for the benefit of the

overlapping Class 3 Lien Law/trust fund claimants.  (*Plan* at §§ 4.1(b), 5.3.)[2]  The $11 million

number was not random; it was selected because it rounded up Pavarini's approximate $10.8

---

[1]       "ECF/Main Case" refers to the docket in the bankruptcy case, and "ECF" refers to the docket in this
adversary proceeding.

[2]       A copy of the *Plan* is annexed to the *Confirmation Order*.

million claim.  All Class 3 claims were deemed disputed, (*Plan* at § 4.3(b)), and the Class 3

claimants would continue to litigate their rights primarily in non-bankruptcy *fora.*  (*Id.* at §

5.6(c).)  Once a Class 3 Claim was finally resolved, the claim would be allowed and paid from

the Trust Fund Account, the Secured Claim Reserve Account, new financing, or general funds of

the Debtor.  (*Id.* at § 4.3(c).)[3]

The *Plan* also contained various releases and injunctions.  To the extent relevant and with

certain exceptions that no party has invoked, the *Plan* enjoined the commencement or

continuation of any action against Waterscape to recover any claim that arose before the

confirmation date regardless of whether a proof of claim was filed.  (*Plan* at § 7.1.)  The releases

and injunctions were subject to several exceptions, including the following:

> 7.9    **Release Clarification**.  No provision in this Plan, including sections 7.1,
> 7.2 and 7.6 hereof, shall release, waive, enjoin, or limit the liability of the Debtor
> or the Released Parties with respect to any Claim, cause of action or other
> proceeding of any kind and in whatever forum, brought or asserted by or on
> behalf of any of the Claimants classified in Class 3 of the Plan, including Pavarini
> and Civetta, and all said Claimants' Claims, rights, interests, and defenses are
> hereby, and within the Plan and its provisions, preserved.

The *Confirmation Order*, at ¶ 15, repeated the exception contained in § 7.9 of the *Plan*.

The *Plan* became effective on January 20, 2012, when the parties closed on the sale of

hotel.  (*See Debtor's Second Post-Confirmation Report and Notice of Effective Date of the*

*Debtor's Confirmed Second Amended Plan of Reorganization*, dated Jan. 20, 2012, at ¶ 3

(ECF/Main Case Doc. #306).)

---

[3]        An additional $3 million was carved out of the hotel sale proceeds to fund the Class 5 Reserve Account for
the benefit of the unsecured creditors.  (*Plan* at § 4.1(b).)

### 2.      The Adversary Proceeding

On June 10, 2011, Pavarini commenced this adversary proceeding.  (*See Complaint*,

dated June 10, 2011 (ECF Doc. #1).)  The *Complaint* included seven counts, but the last four

were directed at US Bank and have been dismissed by stipulation.  The three remaining counts

asserted against Waterscape and the "Waterscape Defendants"[4] centered on the allegations that

they had violated Article 3-A of the New York Lien Law by diverting funds that Waterscape was

required to hold in trust for the benefit of Pavarini and the subcontractors.  (*See Complaint* at ¶¶

2, 11, 20(d), 34, 36, 37, 38, 60, 68, 69, 74, 76, 78, 80, 82, 84.)  Although the Complaint focused

on diversions to US Bank and the John Doe defendants, it also alleged that the "Debtor and/or

the Waterscape Defendants *divided among themselves* or otherwise diverted" the trust funds.

(*Id.* at ¶ 76 (emphasis added).)  Count I sought a declaration that the estate held only bare legal

title to any and all trust funds, including the Trust Assets,[5] and had no equitable interest in those

funds until the claims of Pavarini and the subcontractors were fully satisfied.  (*Id.* at ¶ 63.)

Count II alleged that Waterscape "should be compelled to identify all trust funds that were

diverted and/or distributed by them, and all such trust funds should be recovered and returned to

the benefit of Pavarini and the Trade Contractors, as the trust beneficiaries."  (*Id.* at ¶ 80.)  Count

III demanded an accounting of all trust funds.  (*Id.* at ¶ 84.)

Pavarini eventually moved for partial summary judgment on Counts I and II.  It

contended that Waterscape had diverted approximately $14.5 million received from the proceeds

---

[4]      The *Complaint* defined the "Waterscape Defendants" to include the Debtor, 45 Inmex Corp., Catmex 45, Corporation, Gemstone 45 LLC, Salim Assa a/k/a Solly Assa, Ezak Assa, Elias Hanono, Jacobo Hanono, Simon Masri, Salomon Masri and Ezra Tawil.  (*Complaint* at ¶ 8.)

[5]      "Trust Assets" meant "the proceeds generated from the Debtor's proposed sale of condominium units of the Project pursuant to this Court's Order entered on May 31, 2011, and the Debtor's proposed sale of the hotel portion of the Project, *i.e.*, the Hotel Assets, pursuant to the Debtor's pending Plan of Reorganization filed on May 6, 2011." (*Complaint* at ¶ 46.)

of the sale of condominium units, and paid the proceeds to US Bank.  Pavarini also maintained

that Waterscape had diverted $4,458,616.97 from requisitions funded by US Bank.  *Waterscape I*

referred to the latter sum as the "Shortfall."  *Waterscape I,* 483 B.R. at 606.

The Court granted partial summary judgment to the extent of concluding that the

condominium proceeds were trust funds, and Waterscape had diverted the trust funds by paying

them to US Bank.  *Id.* at 613.  The Court declined, however, to award any monetary relief

because Waterscape and US Bank had restored $11 million by funding the Trust Fund Account

under the *Plan*.  *Id.* at 616.  The Court denied the motion for partial summary judgment with

respect to the Shortfall because Waterscape had failed to demonstrate as a matter of law that a

diversion had occurred.  *Id.* at 612-13.

## C.    The Final Accounting

The CMA included an alternate dispute resolution procedure to resolve contract-related

claims before a Dispute Resolution Board ("DRB").  After years of litigation between

Waterscape and Pavarini, the DRB rendered its Final Accounting on March 11, 2014, in which it

concluded that Waterscape owed Pavarini $8,093,655.92 under the CMA.  Pavarini moved to

compel Waterscape to pay this sum, plus interest, in accordance with the provisions of the Plan

and prior to judicial review.  The Court granted the motion, *Waterscape II*, 2014 WL 1389762, at

*6, and Waterscape subsequently paid Pavarini.  As matters stand, and subject to the possibility

of further proceedings following judicial review of the DRB determinations, Waterscape has

fully satisfied its contract debt to Pavarini.

### D.    The Motion and Cross-Motion

One day after the DRB rendered its Final Accounting, Pavarini moved to amend its

complaint to assert two additional claims relating to the diversion of trust funds.  The proposed

amended complaint (the "PAC") alleges that Waterscape and/or Assa "intentionally and

maliciously" diverted trust funds drawn from US Bank to Assa's other businesses, including 511

9th LLC, Assa Realty LLC, 940 8th Ave LLC, Denver West LLC, Donna Loren LLC, Sheermax

LLC, Assa Hospitality Management LLC, Cassa 28, Cassa NYC, and Ayalon SA.  (PAC at ¶¶

41, 78-80.)[6]  It identifies four instances between December 29, 2008 and July 1, 2010 involving

diversions totaling $8.3 million to Assa, and alleges upon information and belief, that

Waterscape and/or Assa intended to deprive Pavarini as beneficiary of the diverted funds.  (PAC

at ¶¶ 42-43.)  Based on these allegations, Pavarini proposes to add a claim for punitive damages

against the Waterscape Defendants to Count II and a new Count VIII[7] through which it seeks to

compel Assa (1) to identify all trust funds that he diverted, (2) repay the diverted funds to

Pavarini and the Trade Contractors, and (3) pay punitive damages.

In its moving memorandum, (*see Memorandum of Law in Support of Motion for Leave to

Amend Complaint to Add a Demand for Punitive Damages*, dated Mar. 12, 2014 (ECF Doc.

#150)), Pavarini contended that the information regarding the specific diversions came to light

either during discovery or as a result of the DRB's Final Accounting, (*id.* at 3-6), the Waterscape

Defendants would not suffer prejudice and Pavarini did not unduly delay in proposing the

---

[6]    The parenthetical "PAC at ¶ _" refers to the paragraphs in the proposed amended complaint, dated Mar. 12, 2014, a copy of which is annexed as Exhibit 1 to the *Declaration of Eric Sleeper, Esq. in Support of Pavarini McGovern, LLC's Motion for Leave to Amend Complaint to Add a Demand for Punitive Damages*, dated Mar. 12, 2014 (ECF Doc. # 151).

[7]    The PAC reasserted Counts IV through VII in the original complaint.  Those Counts had been directed against US Bank but were subsequently dismissed.  Pavarini confirmed that it was a mistake to reassert these Counts in the PAC.

amendment.  (*Id.* at 7-10.)  In addition, Count VIII arose out of the conduct and transactions

alleged in the *Complaint*, and consequently, related back.  (*Id.* at 11.)

Waterscape opposed Pavarini's motion to amend and cross moved to add two

counterclaims.[8]  (*See Waterscape Resort LLC's: (I) Opposition to the Motion of Pavarini

McGovern, LLC to Amend its Complaint to Assert Punitive Damages; and (II) Cross-Motion in

Support of Motion to Amend Answer to Assert Counterclaim Against Pavarini McGovern, LLC

for Willful Overstatement of Lien Pursuant to N.Y. Lien Law § 39*, dated Mar. 27, 2014

("*Waterscape Opposition*") (ECF Doc. #161-1).)  Waterscape argued that Pavarini had unduly

delayed in seeking to amend its complaint to assert a punitive damage claim, (*id.* at ¶ 17),

Waterscape would suffer prejudice because the Court had already decided the scope of Pavarini's

damages resulting from the diversion of funds in *Waterscape I*, (*id.* at ¶ 18), punitive damages

are reserved for "exceptional cases," and the mere diversion of funds did not approach the

"outrageous" level of conduct required to impose punitive damages.  (*Id.* at ¶¶ 21, 24.)

Waterscape also contended that the allegations in the PAC regarding intent and malice were

conclusory, (*id.* at ¶ 23), and the doctrine of law of the case barred Pavarini's claim for punitive

damages because the Court ruled in *Waterscape I* that Waterscape had established the defense of

restoration.  Waterscape argued that this ruling negated the contention that Waterscape had

intended to permanently deprive Pavarini of the funds.  (*Id.*)

As noted, Waterscape sought leave to interpose two counterclaims.  Count I charged that

Pavarini filed an exaggerated notice of lien.  (*Counterclaim* at ¶¶ 4-8, 37-39.)  Count II asserted a

---

[8]    A black-lined copy of Waterscape's proposed *Answer to Complaint with Counterclaims* ("*Counterclaims*")
is annexed as Exhibit A to the *Affirmation of Eric S. Medina*, dated Mar. 27, 2014 (ECF Doc. # 161-2).)  The portion
of the answer responding to the allegations in the *Complaint* ends at paragraph 122 on page 14 of Exhibit A, and the
counterclaims follow thereafter.  All citations to the *Counterclaim* refer to paragraphs in the counterclaim portion of
the answer. For example, "*Counterclaim* at ¶ 4" refers to paragraph 4 on page 15 of Exhibit A.

fraud claim primarily alleging that Pavarini charged Waterscape $200,000 for subguard

insurance that it never procured.  (*Id.* at ¶¶ 9-35, 40-41.)  Pavarini opposed the cross-motion,

contending that the proposed counterclaims were futile.  The willful exaggeration claim fell

because the adversary proceeding did not involve an effort by Pavarini to foreclose a mechanic's

lien, (*Reply Memorandum of Law in Further Support of Pavarini McGovern, LLC's Motion for

Leave to Amend Its Complaint and in Opposition to Waterscape Resort LLC's Cross Motion for

Leave to Amend Its Answer*, dated Apr. 2, 2014 ("*Pavarini Reply*"), at 6-7 (ECF Doc. # 164)),

and the fraud claim relating to subguard insurance was barred by prior decisions of the DRB and

the state court.  (*Id.* at 7-8.)

        During oral argument of the motion and cross-motion, the Court raised the possibility that

the confirmation of the *Plan* discharged the claim for punitive damages, and offered the parties

an additional opportunity to brief the issue.  Waterscape belatedly submitted a supplemental

memorandum, (*see Waterscape Resort LLC's Supplement in Further Opposition to Pavarini

McGovern LLC's Motion to Amend the Complaint to Assert Claims for Punitive Damages*, dated

Aug. 14, 2014 (ECF Doc. # 185-1)), in which it argued that the claim for punitive damages arose

prior to the petition date, the heavily negotiated plan dealt with Pavarini's prepetition claims, and

the punitive damage claim was barred by the discharge and injunction provisions in the *Plan*.

(*Id.* at ¶¶ 15-17) (citing *Olin Corp. v. Riverwood Int'l Corp.* (*In re Manville Forest Prods.

Corp.*), 209 F.3d 129 (2d. Cir. 2000)).  Waterscape also contended that the payment of Pavarini's

claim coupled with the release contained in the *Plan*, which did not exclude the punitive damage

claim, rendered the claim moot.  (*Id.* at ¶¶ 18-19.)  Pavarini responded that the *Manville* case

cited by Waterscape was distinguishable, it could amend the *Complaint* to assert a punitive

damage claim because the claim related back to the diversion claim asserted in the original

complaint (citing *In re Ben Franklin Hotel Associates*, 186 F.3d 301 (3d Cir. 1999)), and the Plan

did not restrict the distribution to the Class 3 creditors to the $11 million Trust Fund Account.

(*Pavarini McGovern, LLC's Response to Waterscape Resort LLC's Supplement in Further

Opposition to Pavarini McGovern, LLC's Motion to Amend the Complaint to Assert Demand for

Punitive Damages*, dated Aug. 20, 2014, at ¶¶ 5-7, 9 (ECF Doc. 186-1).)

Concluding that the first round of supplemental briefing did not adequately answer the

question, the Court ordered a second round of briefing centered on two issues.  (*See Order

Directing Further Supplemental Briefing,* dated Sept. 12, 2014 (ECF Doc. # 190).)  First, did the

*Plan* discharge Pavarini's punitive damage claim as against Waterscape and bar Pavarini from

now asserting it under *Farber v. Wards Co., Inc.*, 825 F.2d 684 (2d Cir. 1987)?  Second, if the

claim was not discharged, "what is the appropriate test for determining whether to grant leave to

amend a claim *after* confirmation?"  (Emphasis in original.)

Waterscape responded, (*see Waterscape Resort LLC's Supplemental Briefing Pursuant to

September 12, 2014 Order*, dated Sept. 29, 2014 (ECF Doc. # 191)), that the punitive damage

claim was discharged and therefore barred under *Farber*.  It further argued that even if it was not

discharged, the Court should not permit the post-confirmation amendment because Pavarini

failed to show a "compelling reason."  *See In re Winn-Dixie Stores, Inc.*, 639 F.3d 1053, 1056

(11th Cir. 2011); *Holstein* v. *Brill*, 987 F.2d 1268, 1270 (7th Cir. 1993); *Allstate Insurance Co.* v.

*Credit Suisse Securities (USA) LLC*, Case No. 11-cv-2232, 2011 WL 4965150, at *6 n.7

(S.D.N.Y. Oct. 19, 2011).

In reply, (*see Pavarini McGovern, LLC's Response to Waterscape Resort LLC's

Supplemental Briefing Pursuant to September 12, 2014 Order*, dated Oct. 17, 2014 (ECF Doc.

11

#192)), Pavarini asserted that the confirmation did not discharge the punitive damage claim,

directing the Court's attention for the first time to the exception to the discharge of Class 3

claims contained in the *Confirmation Order*.  As to the second question, Pavarini ignored the

case law cited by Waterscape, and argued for the more liberal test under *In re Ben Franklin*

*Hotel Associates*, 186 F.3d 301 (3d Cir. 1999).[9]

## DISCUSSION

### A.    Discharge

With exceptions that are not relevant, Bankruptcy Code § 1141(d)(1)(A)[10] discharges the

debtor from any debts that arose prior to confirmation *unless the plan or confirmation order*

*provide otherwise.*  Although it required two rounds of briefing, it is now clear that the *Plan* and

*Confirmation Order* excepted the claims of the Class 3 claimants, including Pavarini, from the

discharge, release and injunction provisions of the *Plan*.  (*Plan* at § 7.9; *Confirmation Order* at ¶

15.)  Pavarini's claims were not discharged, and I turn to the question of whether the proposed

amendment should be permitted.

---

[9]      Pavarini subsequently filed an unauthorized supplemental declaration attaching an unsworn memorandum from a state court proceeding involving allegations that Assa had diverted trust funds from another project.  (*See* ECF Doc. #193.)  The submission was unauthorized and irrelevant, and the facts presented in it were hearsay.  The Court has not considered the submission.

[10]     Bankruptcy Code § 1141(d)(1)(A) provides:

(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan-

(A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not-

(i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan . . . .

B.      **The Proposed Amendment**

1.      **Introduction**

The *Complaint*, *inter alia*, asserted that Waterscape had diverted trust funds aggregating

$4,457,983.07 by failing to pay over to Pavarini the work requisitions funded by US Bank and

owed to Pavarini based upon the work provided under the CMA.  (*See* ¶¶ 36-41.)  The *Complaint*

also alleged that Waterscape had diverted trust funds by paying the proceeds of condominium

sales to US Bank.  (*See* ¶¶ 42-49.)  In Count II, the *Complaint* demanded that the diverted trust

funds "should be recovered and returned to the benefit of Pavarini and the Trade Contractors, as the

trust beneficiaries."  (¶ 80.)

The filing of a timely proof of claim is the proper procedure to assert a right to a

distribution from a chapter 11 estate.  *See* FED. R. BANKR. P. 3003(c)(2) (stating that a creditor

who fails to file a timely proof of claim "shall not be treated as a creditor with respect to such

claim for the purposes of voting or distribution").  Pavarini's proof of secured claim sought the

unpaid amounts due under the CMA, but did not attach the *Complaint* or assert the specific

claims alleged in the *Complaint*.  Nevertheless, the proof of claim arguably subsumed the claim

for recovery of the diverted trust funds to the extent the unpaid amounts formed part of its claim,

but even if it did not, Waterscape has never objected to the assertion of the diversion claim in the

*Complaint* rather than in a proof of claim.  Moreover, the *Complaint* may be treated as an

informal proof of claim to the extent that the diversion claim asserts a "right to payment" under

11 U.S.C. § 101(5)(A).[11]

---

[11]     A Court may treat a request for monetary relief asserted in a complaint as an informal proof of claim where
the complaint (1) is timely filed and becomes part of the judicial record, (2) states the nature, existence and amount
of the debt, and (3) evidences the creditor's intent to hold the estate liable.  *See Wilson v. Residential Capital, LLC*
(*In re Residential Capital, LLC*), Adv. P. No. 12-01936, 2014 WL 3057111, at *7 (Bankr. S.D.N.Y. July 7, 2014).

The *Complaint* did not, however, assert a claim for punitive damages, and the deadline for filing claims expired on June 10, 2011. (*Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*, dated May 4, 2011 (ECF/Main Case Doc. #41).) Pavarini's current motion seeks leave to amend the *Complaint*, *inter alia*, to now assert the punitive damages claim, but for the reasons stated, it should be viewed as a motion for leave to amend a proof of claim after the bar date. The decision to permit a post-bar date amendment to a proof of claim is within the discretion of the bankruptcy court. *In re Integrated Resources, Inc.,* 157 B.R. 66, 69-70 (S.D.N.Y. 1993). Amendments should be freely allowed, but post-bar date amendments are subject to "careful scrutiny to assure that there was no attempt to file a new claim under the guise of an amendment." *Midland Cogeneration Venture L.P. v. Enron Corp.* (*In re Enron Corp.*), 419 F.3d 115, 133 (2d Cir. 2005) (quoting *Integrated Resources*, 157 B.R. at 70). Courts generally engage in a two-step inquiry when considering the allowance of late amendments. First, the amended claim must "relate back" to a timely filed proof of claim. An amendment relates back to an original claim if it cures a defect of form in the original claim, describes the original claim with greater particularity, or pleads a new theory of recovery on the facts set forth in the original claim. *Enron*, 419 F.3d at 133. Second, courts will consider the facts of the case and determine whether it would be equitable to allow the amendment. *Id.* Belated amendments to timely claims will be freely allowed in the absence of prejudice to the other parties. *Id.* at 133-34.

Leave to amend may be less appropriate after confirmation. *Holstein v. Brill*, 987 F.2d 1268, 1270 (7th Cir. 1993). With certain exceptions, confirmation discharges all pre-confirmation debts other than those provided for in the plan. 11 U.S.C. § 1141(d)(1)(A) and Bankruptcy Code § 524(a)(2) operates as an injunction against the collection of a discharged

14

debt. "[E]ach claimant gets a 'new' claim, based upon whatever treatment is accorded to it in the plan itself." *Holstein*, 987 F.2d at 1270 (quoting *In re Benjamin Coal Co.,* 978 F.2d 823, 827 (3d Cir. 1992). In the Second Circuit, the bankruptcy court has no authority to permit an amendment to assert a discharged claim even if the proposed amendment relates back to a timely claim. *Farber v. Wards Co.*, 825 F.2d 684, 689 (2d Cir. 1987). Even in those circuits where post-confirmation amendments are not foreclosed as a matter of law, the creditor must demonstrate a "compelling reason" to amend the claim given the discharge, the *res judicata* effect of the plan, the disruption to the orderly process of adjudication and the interests of finality. *IRT Partners, L.P. v. Winn-Dixie Stores, Inc.* (*In re Winn-Dixie Stores, Inc.*), 639 F.3d 1053, 1056-57 (11th Cir. 2011); *Holstein*, 987 F.2d at 1270-71; *but cf. In re Ben Franklin Hotel Associates,* 186 F.3d 301, 309 (3d Cir. 1999) (affirming bankruptcy court's application of relation back test to post-confirmation amendment).

Here, the rationale for requiring Pavarini to show "compelling circumstances" is missing. The *Plan* did not discharge Pavarini's claims, and distribution on its allowed claim was not limited to the Trust Fund Account. In fact, the Court has been advised that the Trust Fund Account was insufficient to discharge Pavarini's allowed claim liquidated through the Final Accounting, and Waterscape had to use additional funds. Nor will the amendment disrupt the claims resolution process; the only claim left to resolve in this Court is Pavarini's punitive damage claim. In short, the confirmation of the *Plan* lacked the finality that the "compelling circumstances" test is designed to foster.

Most important, Waterscape has never contended that the assertion of the punitive damage claim will disrupt the *Plan* or threaten its ultimate consummation. The only prejudice that Waterscape has asserted is based on its belief that the Court had already decided the scope of

15

Pavarini's damages on the diversion theory when it ruled "that diversion did occur but Waterscape had restored the funds, absolving it of further liability." (*Waterscape Opposition* at ¶ 18.)

Waterscape is mistaken. The Court granted partial summary judgment to Pavarini concluding that Waterscape had diverted nearly $14.5 million of condominium sales proceeds, *Waterscape I*, 483 B.R. at 613, but had restored $11 million of the diverted funds by establishing the Trust Fund Account, *id.* at 616, and it was premature to conclude that Waterscape should be required to restore any more funds especially in light of the other security available to the Class 3 claimants. *Id.* at 616-17. The Court denied summary judgment with respect to Pavarini's distinct claim that the Waterscape Defendants had diverted $4.46 million of trust funds requisitioned from US Bank primarily because Pavarini conceded for the purpose of its motion that Waterscape's trust fund expenditures exceeded its trust fund receipts. *Id.* at 612-13. The Court did not rule on the amount of that claim. Accordingly, Pavarini's motion must be judged under the two-step analysis discussed in *Enron*.

### 2.    Proposed Count II

Although the *Complaint* focused on two types of diversion – the payments to US Bank and the Shortfall – Count II of the *Complaint* alleged more broadly that the Waterscape Defendants "divided among themselves or otherwise diverted" trust funds. (*Complaint* at ¶ 76.) Through discovery, Pavarini has identified with greater specificity the diversion claim alleged in the *Complaint*. The claim for punitive damages pleads a new theory of recovery arising from the same facts asserted in the *Complaint*, and therefore, relates back. *Ben Franklin Hotel*, 186 F.3d at 309 (punitive damage claim related back to timely claims).

16

Furthermore, equitable considerations weigh in favor of granting leave to amend.

> Multiple factors play a role in this analysis, including whether the debtor, or other creditors, would be unduly prejudiced by the amendment, or whether, instead, other creditors would "receive a windfall" from the disallowance of the amendment, and whether the late claimant acted in good faith and the delay was justified. [Citation omitted.] Of these, however, "[t]he critical consideration is whether the opposing party will be unduly prejudiced by the amendment."

*Enron*, 419 F.3d at 133 (quoting *In re Integrated Resources,* 157 B.R. at 70).

As just discussed, Waterscape has not identified any prejudice to itself or the Class 3 creditors if Pavarini is permitted to assert a claim for punitive damages. Furthermore, Pavarini has acted in good faith and not unduly delayed in asserting its proposed amendment. Although Pavarini raised diversion claims at the outset of the adversary proceeding, it only learned through discovery that Assa diverted millions of requisitioned funds to himself while Pavarini remained unpaid. Accordingly, equitable considerations support Pavarini's request.

Waterscape also contends that leave to amend should be denied because the amendment would be futile. A court may deny leave to amend as futile where the proposed amended claim would not withstand a motion to dismiss under Federal Civil Rule 12(b)(6). *Krys v. Pigott*, 749 F.3d 117, 134 (2d Cir. 2014); *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). While not every diversion of trust funds will support a punitive damage award, *see ARA Plumbing & Heating Corp. v. Abcon Assocs., Inc.*, 843 N.Y.S.2d 154, 154-55 (N.Y. App. Div. 2007), the allegations that trust funds were diverted to the owner's principals while the claims of contractors, subcontractors and suppliers remained unsatisfied meets the high threshold of moral culpability to support an award of punitive damages. *Sabol & Rice, Inc. v. Poughkeepsie Galleria Co.*, 572 N.Y.S.2d 811, 813 (N.Y. App. Div. 1991); *see Pinnacle Environmental Sys., Inc. v. R.W. Granger & Sons, Inc.,* 665 N.Y.S.2d 473, 475 (N.Y. App. Div. 1997). The PAC

17

alleges that Assa diverted trust funds drawn from US Bank to fund shortfalls in his other

businesses at a time when the claims of Pavarini and the subcontractors remained unpaid.  (PAC

at ¶¶ 41-42, 78-80.)  These allegations assert a plausible claim for punitive damages.[12]

The Court notes that the same conclusion would flow from the application of the general

rules that govern the amendment of pleadings under Rule 15(a) of the Federal Rules of Civil

Procedure.  Generally, leave should be freely granted, but the court may deny the motion in

instances of undue delay, bad faith, dilatory motive, undue prejudice to the opposing party or

futility.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Legal prejudice involves consideration,

*inter alia*, of whether the new claim would require the opposing party to expend significant

additional resources to conduct discovery or prepare for trial and whether the amendment would

significantly delay the resolution of the case.  *Block v. First Blood Assocs.*, 988 F.2d 344, 350

(2d Cir. 1993).  For the reasons stated, the amendment was not interposed with undue delay or in

bad faith, Waterscape has not identified any legal prejudice and the amendment is not futile.

The motion for leave to assert Count II is, therefore, granted.

### 3.    Proposed Count VIII

Proposed Count VIII alleges that Assa exercised dominion and control over the trust

assets, "intentionally and maliciously" used the funds drawn from US Bank to pay himself

millions of dollars without satisfying Pavarini's trust claims, and upon information and belief,

intended to deprive Pavarini permanently of these assets.  (PAC at ¶¶ 117-19.)  As a

---

[12]    Waterscape contends that the restoration of funds under the *Plan* "negates any contention that Waterscape intended to permanently deprive [Pavarini] of its funds."  (*Waterscape Opposition* at ¶ 23.)  The relevant time to determine Assa's intent is when the diversion occurred.  The restoration of the trust funds occurred after the alleged acts of diversion and were not contemplated by Waterscape in its initial plan.  Waterscape (and US Bank) agreed to establish the Trust Fund Account as a compromise to settle Pavarini's objection to the original plan.

consequence, Assa should be compelled to identify all such diverted trust assets, all such funds should be recovered and returned to the benefit of Pavarini and the subcontractors and Assa should pay Pavarini punitive damages.  (PAC at ¶¶ 120-21.)

This claim duplicates proposed Count II, which already alleges the Waterscape Defendants, including Assa, diverted funds and seeks punitive damages. (PAC at ¶¶ 78-80, 87.) Moreover, the *Complaint* already seeks to compel the Waterscape Defendants, including Assa, to identify all trust funds that were diverted or distributed to them and recover and return the diverted funds to the benefit of Pavarini and the Trade Contractors.  (*Complaint* at ¶ 80.) Accordingly, the motion for leave to assert Count VIII is denied.

## C.    The Cross-Motion to Amend to Add Counterclaims

Waterscape is not seeking to amend a proof of claim, and the usual rules governing leave to amend, discussed *supra*, apply to the cross-motion.  Pavarini's opposition to the cross-motion is limited to the argument that the amendment is futile.[13]

### 1.    Count I – Willful Exaggeration of Lien

Waterscape seeks to add a counterclaim for willful exaggeration of a mechanic's lien relying on New York Lien Law § 39.  Section 39 states:

> In any action or proceeding to enforce a mechanic's lien upon a private or public improvement or in which the validity of the lien is an issue, if the court shall find that a lienor has wilfully exaggerated the amount for which he claims a lien as stated in his notice of lien, his lien shall be declared to be void and no recovery shall be had thereon.  No such lienor shall have a right to file any other or further lien for the same claim.  A second or subsequent lien filed in

---

[13]    Neither side discussed the possibility that the cross-motion would be rendered moot if I granted Pavarini's motion for leave to amend.  Waterscape would then have the opportunity to file an answer to the amended complaint that could include the counterclaims identified in its cross-motion.  Since neither side discussed the issue, I will decide the cross-motion independent of the disposition of Pavarini's motion.

contravention of this section may be vacated upon application to the court on two days' notice.

N.Y. LIEN LAW § 39 (McKinney 2014).

I agree that the claim is futile. The *Complaint* did not assert a claim to foreclose a mechanic's lien. In fact, Pavarini's mechanic's lien was discharged under the *Plan* when the Trust Fund Account was funded. (*Plan* at § 5.3.) Consequently, the cross-motion for leave to amend to add this counterclaim is denied.

### 2.    Count II – Fraud

Count II mainly concerns Pavarini's failure to procure subguard insurance. Subguard insurance pays for the costs of subcontractor defaults by enabling the prime contractor to terminate a defaulting subcontractor and recover the costs of the default through insurance. (*Counterclaim* at ¶ 10.) The *Counterclaim* alleges upon information and belief that "Pavarini falsely or fraudulently took $200,000 in trust funds" to pay insurance premiums to cover 160 Broadway Concrete Corp. ("Broadway Concrete"), a major subcontractor, but did not obtain the required subguard insurance. (*Counterclaim* at ¶¶ 9, 11-13.) Toward that end, Pavarini submitted inaccurate and untruthful Applications for Payment to Waterscape between September 2007 and June 2009 in which it sought reimbursement for subguard premiums it never paid.[14] (*Counterclaim* at ¶¶ 18, 22-24.) Waterscape alleges upon information and belief that Pavarini refused to place Broadway Concrete in default although it was responsible for 140 days of delay because its default was not insured. (*Counterclaim* at ¶¶ 14, 15, 29.)

---

[14]    Waterscape alleges that Pavarini's project executive represented in a March 27, 2014 e-mail that it had subguard insurance that covered Broadway Concrete. (*Counterclaim* at ¶ 24.) The email could not have induced Waterscape to pay premiums between 2007 and 2009.

The *Counterclaim* includes additional allegations that purport to sound in fraud. Waterscape asserts that Pavarini failed to disclose the terms of the Broadway Concrete Trade Contract (and obtain Waterscape's approval), (*Counterclaim* at ¶¶ 16, 20), and that Broadway Concrete lacked adequate financial resources and bondability, was not included in Pavarini's subguard program, and had not provided payment and performance bonds. (*Counterclaim* at ¶¶ 17, 21.) Waterscape claims that Pavarini failed to bill Waterscape for and collect from Waterscape only actual costs of work and the agreed fee. (*Counterclaim* at ¶ 19.) Finally, Waterscape avers that Pavarini misrepresented the levels of completion by the subcontractors in its Application for Payments and that Waterscape paid for incomplete and defective work in reliance on those misrepresentations. (*Counterclaim* at ¶¶ 30-34.) Nevertheless, its fraud claim appears to be limited to the subguard insurance that Pavarini billed but never procured or intended to procure, the resulting cover up and the adverse effects that these actions had on the Project. (*Counterclaim* at ¶ 41.)

As noted, Pavarini argues that the fraud claim is barred by prior decisions of the state court and the DRB. In determining the legal sufficiency of a claim, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court may also consider documents that the party relied on in bringing suit and that are either in the party's possession or that the party knew of when bringing suit. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992); *McKevitt v. Mueller*, 689

F. Supp. 2d 661, 665 (S.D.N.Y. 2010).  Where the complaint cites or quotes from excerpts of a document, the court may consider other parts of the same document submitted by the parties on a motion to dismiss.  *131 Main St. Assocs. v. Manko*, 897 F. Supp. 1507, 1532 n.23 (S.D.N.Y. 2010).

Pavarini's opposition goes well beyond the four corners of the record, and cites evidence that Waterscape did not rely on in drafting its fraud claim.  Furthermore, Pavarini implies that Waterscape's fraud claim is really a breach of contract claim, but the distinction is not always an easy one to make.  *See Sommer v. Federal Signal Corp.*, 593 N.E.2d 1365, 1369 (N.Y. 1992) (discussing the "guideposts for separating tort from contract claims").  The Court declines to speculate on the viability of the fraud claim without the benefit of briefing on the issue.  Moreover, if Pavarini contends that prior determinations in another forum estop Waterscape from asserting a fraud claim relating to subguard insurance, it should place that information before the Court on a motion for summary judgment.  Accordingly, the cross-motion for leave to amend to assert the fraud claim in Count II of the *Counterclaim* is granted.  To avoid any misreading of the scope of this determination, the Court is not deciding that the fraud claim is legally sufficient, but only that Pavarini's specific futility arguments are procedurally improper for the reasons stated.

The Court has considered the remaining arguments asserted by the parties and concludes that they lack merit.  The parties are directed to submit a consensual order or settle non-

consensual orders that reflect the disposition of the motions and provide for the service and filing

of the amended complaint and the amended answer.

Dated: New York, New York
          November 24, 2014

                                        /s/ *Stuart M. Bernstein*
                                        STUART M. BERNSTEIN
                                        United States Bankruptcy Judge