UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------X

In re:                                      :
                                            :
WATERSCAPE RESORT LLC,         :            Chapter 11
                                            :            Case No. 11-11593(SMB)
                        Debtor.   :
---------------------------------------------X
PAVARINI MCGOVERN, LLC,         :
                                            :
                        Plaintiff,   :            Adv. Proc. No. 11-02248
        -- against --              :
                                            :
WATERSCAPE RESORT LLC, et al.   :
                                            :
                        Defendants. :
---------------------------------------------X

## MEMORANDUM DECISION AWARDING MONETARY SANCTIONS PURSUANT TO RULE 37(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE

**A P P E A R A N C E S:**

BARTON BARTON & PLOTKIN LLP
*Attorneys for Plaintiff*
420 Lexington Avenue
New York, NY 10170

        Eric W. Sleeper, Esq.
                Of Counsel

MEDINA LAW FIRM LLC
*Attorneys Defendant Waterscape Resort LLC*
The Chrysler Building
405 Lexington Avenue
Seventh Floor
New York, NY 10174

        Eric S. Medina, Esq.
        John Carlson, Esq.
                Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

The plaintiff Pavarini McGovern, LLC ("Pavarini") has moved for discovery sanctions against the defendant Waterscape Resort LLC ("Waterscape") charging Waterscape with a variety of discovery abuses and spoliation of evidence. (*See Motion for Sanctions for Failure to Produce Documents and Comply with Court Directives, and for Spoliation of Evidence*, dated Nov. 15, 2013 ("*Sanctions Motion*") (ECF Doc. # 109.)[1] The dispute spans many months, involves mutual allegations of wrongdoing and has occupied a substantial amount of time and effort. Having reviewed the long history of the discovery dispute and the pertinent facts, the Court concludes that Pavarini is entitled to an award of reasonable attorneys' fees in the amount of $34,633.95 and reasonable expenses in the amount of $1,110.45 pursuant to Rule 37(b) of the Federal Rules of Civil Procedure based upon Waterscape's failure to comply with this Court's verbal discovery order issued on July 30, 2013.

## BACKGROUND

The background to this adversary proceeding is discussed at length in *Pavarini McGovern, LLC v. Waterscape Resort LLC* (*In re Waterscape Resort LLC*), 483 B.R. 601 (Bankr. S.D.N.Y. 2012) ("*Waterscape I*") and *In re Waterscape Resort LLC*, No. 11-11593, 2014 WL 1389762 (Bankr. S.D.N.Y. Apr. 9, 2014) ("*Waterscape II*"). I assume familiarity with those decisions and limit the discussion, which is nonetheless lengthy, to the facts relevant to the *Sanctions Motion*.

---

[1]    "ECF" refers to the docket in this adversary proceeding.

## A.    The Project

Waterscape owns property located at 66–70 West 45th Street in Manhattan.  On June 28, 2007, it entered into a Construction Management Agreement (the "CMA") with Pavarini that designated Pavarini as the Construction Manager in connection with the project (the "Project") to build a 45–story hotel and condominium building on Waterscape's property.  Pavarini hired subcontractors to do the work.

The Project was funded through loans from U.S. Bank, National Association and USB Capital Resources, Inc. f/k/a USB Capital Funding Corp. (collectively the "Bank").  Waterscape requested advances by submitting monthly Draw Requests to the Bank based on information and documents provided by Pavarini relating to the work covered by the Draw Request.  Once approved, the Bank transferred the funds to Waterscape which became trust funds in the hands of Waterscape under Article 3-A of the New York Lien Law (the "Lien Law").  Waterscape was not required to segregate the trust assets from its own assets or the trust assets attributable to other projects, provided that its books and records clearly showed the allocation to each trust of the deposits into the unsegregated account.  N.Y. LIEN LAW § 75(1)-(3).

To receive payment, Pavarini submitted monthly payment requests to Waterscape.  Waterscape used the funded Draw Requests to pay Pavarini, and Pavarini paid the subcontractors and the vendors.  The CMA included a contractual dispute resolution procedure before a Dispute Resolution Board

3

("DRB"), but a dispute did not affect the status of the trust funds paid by the
Bank to Waterscape.

## B.    The Adversary Proceeding

Waterscape commenced this chapter 11 case on April 5, 2011, and
Pavarini filed this adversary proceeding on June 10, 2011.  The underlying
dispute concerned the allegations that the defendants'—particularly
Waterscape—had diverted trust funds.  Pavarini charged, *inter alia*, that
Waterscape failed to pay Pavarini or otherwise account for $4,458,616.97 in
funded Draw Requests (the "Shortfall").

Pavarini subsequently moved for summary judgment, and among other
things, sought to recover the Shortfall.  In opposition, Waterscape pointed to its
*Verified Statement Pursuant to Lien Law Section 76*, sworn to Nov. 11, 2011
("*Verified Statement*")[2] provided to Pavarini at an earlier time, showing that it
had received $85,157,163.64 in advances from Bank (*Verified Statement*, Ex. E)
and paid out the aggregate sum of $85,226,259.57 for trust fund purposes,
(*id.*, Ex. G), or $69,095.93 more than it drew from Bank.  The Lien Law
expressly vested Waterscape with the discretion to use the trust funds to pay
any trust fund expenses.  Consequently, there would be no diversion if
Waterscape used part of a funded Draw Request to pay a trust fund expense

---

[2]    A copy of the *Verified Statement* was annexed as Exhibit 20 to the *Affidavit of William
Frederick in Support of Pavarini McGovern LLC's Motion for Partial Summary Judgment,* sworn to
June 25, 2012 (ECF Doc. # 35).

that was not included in the expenses submitted by Waterscape to support the particular Draw Request.  *Waterscape I*, 483 B.R. at 612.

Pavarini conceded solely for the purpose of its summary judgment motion that Waterscape had made the payments listed In the *Verified Statement* for legitimate trust fund expenditures.  As a result, Waterscape's "undisputed" evidence demonstrated that its trust fund expenditures exceeded it trust fund receipts, and Waterscape rebutted the presumption of diversion. *Id.* at 612.  Consequently, the Court denied the portion of the summary judgment motion directed at the Shortfall.  Pavarini sought leave to appeal, but the District Court denied the motion by order dated February 21, 2013, and indicated that Pavarini should seek to press for a quick trial to resolve open issues of fact.  *In re Waterscape Resort LLC*, No. 11-11593 SMB, 2013 WL 658152, at *1 (S.D.N.Y. Feb. 21, 2013).

**C.    The Discovery Request and the Subsequent Proceedings**

After the District Court's order, Pavarini served a *Second Notice of Request for Production of Documents and Deposition*, dated Apr. 2, 2013 ("*Second Request*").[3]  Request No. 5(a) sought every record of payment relating to every transaction in Waterscape's general ledger for the years 2007 through

---

[3]    A copy of the *Second Request* is annexed as Exhibit A to the *Motion and Memorandum of Law of Pavarini McGovern, LLC for Entry of Order (1) Compelling Production of Documents, (2) Setting Deposition Date(s) and (3) Imposing Sanctions*, dated May 6, 2013 ("*Motion to Compel*"). (ECF Doc. # 85.)

5

and including 2011.[4]  Request No. 6 focused on the more limited universe of

expenditures detailed in the *Verified Statement*, and Request 6(a) requested

each "[c]heck (front and back), wire transfer confirmation and/or other record

of payment by Waterscape."

The *Second Request* called for production by May 2, 2013.  According to

Pavarini, Waterscape did not respond by the May 2, 2013 deadline; instead, it

informed Pavarini that it had just turned the discovery request over to the

appropriate counsel on May 1, 2013, and that counsel had not read the

demand.  (*Id.* at ¶ 9.)  Waterscape's counsel contended that he requested a two-

week extension, but Pavarini refused.  (*Affirmation of Counsel [Eric S. Medina] in

Opposition to Pavarini McGovern, LLC's Motion to Compel Discovery and in

Support of Cross Motion to Stay further Discovery*, dated May 15, 2013, at ¶¶ 2-

3 (ECF Doc. # 87-2).)

Pavarini wasted no time.  On May 6, 2013, only four days after the due

date for the discovery, it filed the *Motion to Compel* without requesting an

---

[4]      Request No. 5 stated:

For each transaction shown on Waterscape's general ledger (showing the period
from January 1, 2007 through December 31, 2011), which Waterscape provided
in discovery in this adversary proceeding (the "Ledger"), provide the following:

a. Check (front and back), wire transfer confirmation and/or other record of
payment by or to Waterscape;

b. The invoice or bill for the transaction; and

c. Each agreement or contract under which the transaction arose.

informal conference with the Court.[5]  As a result, the Court denied the *Motion to Compel* without prejudice at the May 29, 2013 hearing based upon Pavarini's failure to comply with Local Bankruptcy Rule 7007-1(b).  Instead, it treated the motion as a request for an informal conference, directed the parties to meet and confer and scheduled a chambers conference for June 11, 2013.  (*See Letter from Eric W. Sleeper, Esq. to the Court*, dated July 26, 2013 (ECF Doc. # 91).)  The Court also denied Waterscape's cross-motion to stay discovery.

As a result of the June 11, 2013 conference, Pavarini narrowed and modified the *Second Request*.  First, the original relevant timeframe was reduced from 2007 through 2011 to July 23, 2008 through November 30, 2010.  The reduced timeframe corresponded to the approximate period during which the Shortfall had accumulated.  Second, Pavarini withdrew Request Nos. 1, 11 and 12.  Third, Pavarini agreed with or acceded to the Court's observation that several of the requests (Nos. 6, 9 and 10) overlapped with Request No. 5. Fourth, discovery deadlines were set.  The documents responsive to Request No. 2 (financial transactions between Waterscape and certain affiliates), Request No. 3 (agreements with investors regarding capital infusions in Waterscape), Request No. 4 (retention agreements with accountants), Request

---

[5]    Local Bankruptcy Rule 7007-1(b) states:

*Request for Informal Conference.* No discovery-related motion under Bankruptcy Rules 7026 through 7037 shall be heard unless counsel for the moving party first requests an informal conference with the Court and either the request has been denied or the discovery dispute has not been resolved as a consequence of the conference.

No. 7 (bank statements) and Request No. 8 (employment contracts with controllers) were to be produced within two weeks, and the documents responsive to Request No. 5 were to be produced within thirty days.  (*See Letter from Eric W.  Sleeper, Esq. to Eric S. Medina, Esq.*, dated June 13, 2013; *Letter from Eric S. Medina, Esq. to Eric W. Sleeper, Esq.*, dated June 14, 2013.)[6]

During the next several weeks, Waterscape produced documents electronically and in hard copy, but the parties vehemently disputed whether the production satisfied the modified document request, specifically Request No. 5.  Waterscape turned over six boxes of documents.  According to Pavarini, five of the boxes "contained virtually nothing more than the Requisitions that Pavarini provided to Waterscape [and] [t]he sixth box ["Box No. 6"] contained nothing more than the documentation that Waterscape previously provided in response to Pavarini's demands in the state courts for a Lien Law verified statement from Waterscape."  (*Letter from Eric W. Sleeper, Esq. to the Court*, dated July 26, 2013, at 2.)  According to Waterscape, Pavarini's representatives spent only fifteen minutes reviewing the production, declared that it was incomplete and left.  (*Letter from Eric S. Medina, Esq. to the Court*, dated July 30, 2013 (ECF Doc. # 92).)

---

[6]     Both letters are attached as exhibits to Mr. Sleeper's July 26, 2013 letter to the Court. (ECF Doc. # 91.)

## C.    The July 30, 2013 Conference

The Court conducted another chambers conference on July 30, 2013. This conference is important to the pending motion because the Court made specific directions to Waterscape and stated what would happen if it failed to comply.  As summarized in a letter from Pavarini's counsel, (*Letter from Eric W. Sleeper, Esq. & Daniel H. Crow, Esq. to Eric S. Medina Esq.*, dated Aug. 2, 2013 (ECF Doc. # 93)), Waterscape was required to produce by August 16, 2013 eighteen groups of documents identified in paragraph one of the letter. [7]  Items A, B, C covered the payment records, invoices and agreements for each transaction in the Waterscape general ledger, the same documents sought in Request No. 5 in the *Second Request*, but limited the relevant time frame to July 20, 2008 through November 30, 2010.  In addition, Waterscape was required to produce bank statements and transactional records not produced in response to Item A relating to certain specified accounts (Items D through O), bank reconciliations for each of the accounts (Item P), ledgers and sub-ledgers pertaining to accounts maintained by Waterscape (Item Q), and documents relating to each Draw Request that Waterscape submitted to the Bank.  (Item R.)

As noted, the parties disagreed whether Waterscape had already produced all of its responsive documents, particular those relating to Items A,

---

[7]    The Court has omitted the reference to "¶ 1" and cites to the subparagraphs as "Item" followed by the appropriate letter.

B and C.  As a result, the Court further directed that to the extent that Waterscape took the position that it did not have responsive documents in its possession, custody or control, its manager, Salim Assa, was required to so state in an affidavit, also to be furnished by August 16.  Finally, Waterscape would be precluded from introducing any document at trial that was within its possession, custody or control but was not produced.  Although Waterscape continued to dispute Pavarini's claims that it had failed to turn over the documents in its possession, Waterscape's counsel understood that the direction to produce documents and/or provide the Assa affidavit reflected the "instructions" of the Court, and "[t]o the extent the Debtor does not turnover documents in its custody or control reasonably requested by Pavarini, the Debtor shall be precluded from introducing such evidence at the time of trial of this matter."  (*Letter from Eric S. Medina, Esq. to Eric W. Sleeper, Esq. & Daniel H. Crow, Esq.*, dated Aug. 9, 2013 (ECF Doc. # 94).)[8]

Following the July 30 conference, the parties continued to exchange letters regarding Waterscape's production that essentially repeated what they had said previously.  In its formal response to Pavarini's modified document

---

[8]    Mr. Medina's letter implied that it had no obligation to turn over any documents responsive to Items A, B and C until Pavarini specified what was missing.  While Pavarini's specification—which it eventually provided in the form of a spreadsheet, (*see Letter from Eric W. Sleeper, Esq. & Daniel H. Crow, Esq. to Eric S. Medina Esq.*, dated Aug. 27, 2013 (ECF Doc. # 96))—highlighted the deficiencies in Waterscape's production, it was not a condition to Waterscape's obligation to produce responsive documents by August 16, 2013.  In fact, Waterscape consistently took the position that it had turned over everything, and never deviated from that position even after Pavarini's spreadsheet identified the deficiencies in Waterscape's production.

request, (*see Reorganized Debtor's Answers and Objections to Pavarini McGovern, LLC's Third Notice to Produce Documents,*[9] dated Sept. 17, 2013 ("*Waterscape Discovery Answers*")), Waterscape asserted numerous general objections and stated (1) that it had produced everything it had that responded to Items H, O, P and Q, (2) did not control the non-debtor affiliate accounts that were the subject of Items I, J, K, L, M and N and had nothing further to produce beyond what might have already been produced and (3) the Bank had already produced the Draw Requests to Pavarini in state court litigation, and Waterscape no longer had copies of the Draw Requests.  The *Waterscape Discovery Answers* did not mention Items A, B and C, the documents corresponding to the general ledger transactions involving payments and receipts.

Believing that Waterscape had not provided and would not provide the Waterscape bank statements and other information it had demanded, Pavarini served subpoenas on two banks in the middle of September to obtain documentation and information relating to accounts maintained by Waterscape, Salim Assa, Ezak Assa, 45 INMEX Corp., Catmex 45 Corp.,

---

[9]      The *Waterscape Discovery Answers* are annexed as Exhibit 3 to the *Objections of Pavarini McGovern, LLC to Defendant Waterscape Resort LLC's Motion to Quash Subpoenas to Capital One, N.A. and U.S. Bank, N.A. as Well as Pavarini McGovern, LLCs Cross Motion for Entry of Order, Inter Alia, Compelling Production of Documents*, dated Oct. 1, 2013 ("*Objections to Quash*") (ECF Doc. # 100.)  The *Waterscape Discovery Answers* referred to a Third Request for the production of documents, dated August 13, 2013.  The Court has not seen Pavarini's Third Request, but the *Waterscape Discovery Answers* indicates that the Third Request asked for the same eighteen categories of documents described in Mr. Sleeper's August 2, 2013 letter. (ECF Doc. # 93.)

Gemstone 45 LLC and Developmex 45 Corp.  (*Objections to Quash*, at Exs. 5, 6.)  Waterscape moved to quash the subpoenas.  (*Motion of Defendant, Waterscape Resort LLC, to Quash Plaintiff's Subpoenas to Capital One, N.A. and US Bank, N.A.*, dated Sept. 24, 2013 ("*Motion to Quash*") (ECF Doc. # 98).)  Pavarini opposed the motion and again cross-moved for an order compelling production.  (*Objections to Quash.*)  Pavarini complained that Waterscape had not produced any more documents with the *Waterscape Discovery Answers* or an affidavit from Assa swearing that Waterscape did not have any more documents to produce.  (*Id.* at 18.)  Pavarini also emphasized that Waterscape had completely ignored Items A, B and C.  (*Id.* ("Glaringly, Waterscape's Answers completely ignore the requests outlined in Paragraphs 1 (A) – 1 (C) of the August 27 Letter."))

The Court heard the motion, cross-motion and other matters on October 8, 2013.  Initially, the Court addressed Waterscape's renewed letter request to stay discovery.  (*Transcript of Hearing*, held Oct. 8, 2013 ("*Tr. (10/8)*"), at 6:8-12:14 (ECF Doc. # 107).)  The Court also denied the motion to quash the subpoenas.  The banks had not objected to the subpoenas or argued that compliance was burdensome.  (*Id.* at 12:24-13:2.)  Furthermore, Waterscape raised privacy and relevancy concerns, but conceded that it had already turned over the same records to Pavarini without any promise of confidentiality.  (*Id.* at 13:3-20.)

12

When the Court turned to the cross-motion, Waterscape's counsel, Mr. Medina, promised the overdue Assa affidavit that same day and informed the Court, for the first time, that "[w]e lost a lot of documents." (*Id.* at 24:3-6.) Hearing this, the Court suggested that Pavarini make a motion for sanctions and provide the Court with a copy of whatever Waterscape produced. (*Id.* at 24:13-16.) The Court did not otherwise address the cross-motion.

Waterscape finally produced an affidavit from Assa on October 16, 2013. Assa stated, in substance, that Waterscape had made a diligent search of its records and had no further documentation to produce. (*Affidavit of Salim Assa*, sworn to Oct. 16, 2013, at ¶¶ 7-8.)[10] He added that Waterscape could not produce the bank records of affiliates despite the fact that Assa was a member of the affiliate. (*Id.* at ¶ 9.) Finally, he revealed that Waterscape had moved its offices one time during the preceding two years and believed that "to the extent that any documents of the above have not been produced, they were lost or misplaced relating to our move." (*Id.* at ¶ 10.)

**D.    The QuickBooks Files**

Following the October 8 conference, Pavarini took third party discovery to determine whether unproduced documents existed. At his deposition one week later, Leonard Zimmerman, the head of Waterscape's accounting department,

---

[10]    A copy of Mr. Assa's affidavit is annexed as Exhibit 5 to the *Affirmation in Support of Pavarini McGovern, LLC's Motion for Sanctions Against Waterscape Resort LLC for Failure to Produce Documents and Comply with Court Directives and for Spoliation of Evidence,* dated Nov. 15, 2013 ("*Sleeper Affirmation*"). (ECF Doc. # 110.)

revealed that Waterscape maintained electronically stored information in the form of QuickBooks accounting files, and these records included bank account reconciliations, (*Transcript of Deposition of Leonard Zimmerman*, held Oct. 15, 2013, at 24:25-25:7),[11] trial balances, (*id.* at 68:22-69:3), the check register, (*id.* at 109:12-2), and the accounting journal entries.  (*Id.* at 131:3-25.)

Lillian Mercado, Waterscape's bookkeeper, confirmed Mr. Zimmerman's testimony.  (*Transcript of the Deposition of Lillian Mercado*, held Nov. 25, 2013 ECF Doc. # 118).)  Among other things, she testified that the Waterscape maintained its records electronically in a QuickBooks file that included bank reconciliations, (*id.* at 32:23-34:14), intercompany reconciliations, (*id.* at 36:10-23), accounting journals that included journal entries describing transactions which descriptions did not appear in the general ledger, (*id.* at 67:3-68:16), Waterscape's check register, (*id.* at 69:18-21), and the reason for payments to or credits for the benefit of affiliated entities.  (*Id.* at 203:12-205:20.)  In addition, she testified that Waterscape maintained a sub ledger for accounts payable owed to Pavarini and copies of the requisitions with notations explaining why a requisition was underpaid, (*id.* at 94:10-97:10; 134:8-137:20), but had never seen a trust fund ledger and added that Waterscape did not keep a separate ledger for trust funds for construction costs.[12]  (*Id.* at 5:20-7:7,

---

[11]     Excerpts of the Zimmerman deposition transcript are annexed to the *Sleeper Affirmation* as Exhibit 7.

[12]     Assa testified that Waterscape maintained a separate ledger for the Project's trust funds, (*Sleeper Affirmation*, Ex. 8, at 15:25-16:4), Pavarini stated that the separate trust fund ledger was never produced.  (*Motion for Sanctions Against Waterscape Resort LLC for Failure to*

169:6-171:16.)  Finally, she stated that none of her accounting records were missing or lost.  (*Id.* at 48:10-14.)

## E.   The *Sanctions Motion*

In the interim, Pavarini made the *Sanctions Motion* that the Court had invited, citing Waterscape's repeated failure to produce relevant documents and its spoliation of evidence.  In opposition, Waterscape argued, *inter alia*, that sanctions were inappropriate because it had not violated any Court order, had worked diligently to produce everything that Pavarini requested, and had not spoliated evidence.  (*See Reorganized Debtor's Response to the Motion of Pavarini McGovern, LLC for Sanctions and Spoliation of Evidence*, dated Dec. 4, 2013, at 6-13 (ECF Doc. # 114).)

During December 2013, the Court conducted two more conferences.  The Court sought to put an end to the endless arguments in which Pavarini contended that Waterscape had failed to produce responsive documents and Waterscape argued that it had.  Working with the color-coded ledger that Pavarini had produced as an exhibit to the *Motion to Compel*, the Court directed Waterscape to provide separate folders, corresponding to each line and page reference in the ledger, that included the responsive documents that

---

*Produce Documents and Comply with Court Directives and for Spoliation of Evidence*, dated Nov. 15, 2013 ("*Motion for Sanctions*"), at 10 (ECF Doc. # 109)), but Waterscape implied that it had been produced and produced another copy.  (*See Affirmation of Eric S. Medina*, dated Dec. 4, 2013, Ex. I (ECF Doc. # 114-1).)  In light of the status of the case and the disposition of the *Sanctions Motion*, it is not necessary to resolve this disagreement.

Waterscape claimed it had produced but Pavarini's marked ledger indicated it

had never produced.  (*Transcript of Hearing*, held Dec. 12, 2013, at 37:24-47:21

(ECF Doc. # 120).)

The proceedings that followed failed to resolve the dispute over

production.  Waterscape initially failed to provide specific responses to the line

items that it challenged in Pavarini's ledger, but Pavarini's ledger was itself

problematic.  First, many of the transactions in the general ledger were not

evidenced by an invoice or check, including the deposit of requisitioned funds,

inter account transfers, bank charges and year-end adjustments.  (*Affirmation*

*of Solly Assa*, dated Dec. 23, 2013, at ¶¶ 4-7 (ECF Doc. # 122).)

Second, Pavarini's ledger overstated the problem.  Most of the

transactions involved two sets of entries: Waterscape booked an account

payable when a bill came in and debited cash (and reduced the account

payable) when the billed was paid.  Pavarini's general ledger indicated that

Waterscape had not produced any back up when the bill came in even though

it acknowledged in the spreadsheet attached to the August 27, 2013 letter

detailing the Box No. 6 deficiencies that Waterscape had provided the

documents supporting the payment.[13]  The ledger also indicated that

Waterscape had produced evidence supporting the expenditure when payment

---

[13]    The Court brought one example to Pavarini's attention at the December 31, 2013
hearing.  (*Transcript of Hearing*, held Dec. 31, 2013 ("*Tr. (12/31)*"), at 13:7-18, 17:24-19:21
(ECF Doc. # 135).)  A comparison of the spreadsheet with Pavarini's general ledger revealed
other examples.

went out.  In light of the noted inconsistencies within the ledger, the Court refused to infer that Waterscape had failed to produce the supporting documents that the spreadsheet and highlighted entries in the general ledger indicated had been produced, and stated that it would leave the dispute to be resolved on a document by document basis at trial.  (*Tr. (12/31)*, at 25:7-16.)

It was nevertheless clear from the Zimmerman and Mercado depositions that Waterscape had not produced the QuickBooks files.  In addition, Ms. Mercado had revealed the existence of other relevant documents, including copies of the requisition files with notations by Waterscape indicating why it had not paid all of the funds drawn from the Bank to Pavarini.

As a result of the December 31 conference, the Court bifurcated the relief sought in the *Sanctions Motion,* separating the requests for monetary and non-monetary relief.  First, it precluded Waterscape from introducing documents at trial regarding any of the payments or transfers depicted on the general ledger for the period from July 1, 2008 through November 30, 2010 that were in its possession, custody or control but it had not produced.  Furthermore, to the extent that Waterscape had failed to turn over *any* documentation, Waterscape was precluded from contending that the particular payment or transfer was a trust fund expenditure.  (*Order on Motion of Pavarini McGovern, LLC for Sanctions Against Waterscape Resort LLC for Failure to Produce Documents and Comply with Court Directives, and for Spoliation of Evidence*, dated Jan. 9, 2014 (the "*Preclusion Order*") (ECF Doc. # 133).)

17

Second, the Court sought to weed out the wholly undocumented transactions prior to trial to expedite the trial regarding the remaining transactions. The *Preclusion Order* set certain deadlines for the production of schedules keyed to the *Verified Statement* that identified those payments or transfers that Waterscape had failed to support with *any* documentation, and hence, was precluded from arguing were trust fund expenditures. Waterscape was given time to respond to specific expenditures that it contended were covered by its document production and to provide the copies that it had already produced.[14]

The *Preclusion Order* did not address the allegations of spoliation or the issue of monetary sanctions. Waterscape was nevertheless concerned that the Court had made findings that Waterscape had spoliated evidence based on the deposition testimony of Ms. Mercado. Pavarini first disclosed the results of the Mercado deposition in its reply papers, and Waterscape did not have an opportunity to submit a written response. Pursuant to the *Order Regarding Sanctions Motion*, dated Mar. 28, 2014 (ECF Doc. # 163), the Court granted Waterscape the opportunity to respond to the charge "that Waterscape maintained relevant, responsive documents, including QuickBooks files and

---

[14]    The Court modified the *Preclusion Order* at Pavarini's request to include transactions that did not appear on the *Verified Statement* but which, according to Pavarini, amounted to diversions during the period when the Shortfall accrued. (*Supplement to Court's January 9, 2014 Order on Motion of Pavarini McGovern, LLC for Sanctions Against Waterscape Resort LLC for Failure to Produce Documents and Comply with Court Directives, and for Spoliation of Evidence*, dated Feb. 3, 2014 (ECF Doc. # 133).)

hard copies of documents that explained why Waterscape had failed to pay the entirety of several funded requisitions to Pavarini and the reason for holding back those funds (the 'Specific Requisition Files')."

Salim Assa submitted an affidavit in response.  (*Affidavit of Salim Assa*, sworn to Apr. 4, 2014 (ECF Doc. # 165).)  Mr. Assa asserted that Waterscape produced the Specific Requisition Files on July 25, 2013, but Pavarini had ignored them and left the production after only fifteen minutes.  (*Id.* at ¶ 6.)  Exhibit B to his affidavit included approximately 330 Bates-stamped pages of documents relating to numerous requisitions paid by the Bank and subsequently disbursed, in whole or part, to Pavarini.  Some of the documents included handwritten notations and internal Waterscape emails.

Mr. Assa also offered excuses for not producing the QuickBooks files.  First, Pavarini never specifically asked for the QuickBooks files, but Assa nevertheless authorized the production of the general ledger and trust ledger.[15] (*Id.* at ¶ 9.)  Second, the ledgers contained the same information as QuickBooks and, therefore, the "QuickBooks file is inconsequential at best." (*Id.* at ¶ 10.)  Third, Pavarini had refused to accept the QuickBooks files when Waterscape offered them after discovery had closed.  (*See id.* at ¶ 10.)

---

[15]    The general ledger was produced prior to the *Second Request* as evidenced by the fact that Request No. 5 expressly referred to the transactions depicted in the general ledger.

**E.**     **The Final Accounting**

Events overtook the discovery dispute.  On March 11, 2014, the DRB

rendered its Final Accounting in which it concluded that Waterscape owed

Pavarini $8,093,655.92, plus interest at the annual rate of 15% on the

principal balance of $5,160,130.00 accruing from March 11, 2014 to the date

of payment.  *Waterscape II*, 2014 WL 1389762, at *7.  In *Waterscape II,* the

Court ruled that Waterscape must pay the debt prior to any judicial review,

and Waterscape subsequently satisfied the Final Accounting.  The payment

mooted all of Pavarini's claims for relief except for a monetary award sought in

the *Sanctions Motion* and a claim for punitive damages.  Following the payment,

there were no further proceedings regarding discovery.

**DISCUSSION**

**A.**     **Introduction**

Rule 37 of the Federal Rules of Civil Procedure governs discovery

sanctions.  It states in relevant part:

> (a) **MOTION FOR AN ORDER COMPELLING DISCLOSURE OR DISCOVERY.**
>
> (1) ***In General.***  On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.
>
> . . . .
>
> (3) ***Specific Motions.***
>
> . . . .

20

(B) ***To Compel a Discovery Response.***  A party seeking discovery may move for an order compelling an answer, designation, production, or inspection.  This motion may be made if:

. . . .

(iv) a party fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34.

. . . .

(5) ***Payment of Expenses; Protective Orders.***

(A) ***If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).***  If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.  But the court must not order this payment if:

(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii) other circumstances make an award of expenses unjust.

(B) ***If the Motion Is Denied.***  If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees.  But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

. . . .

(b) **FAILURE TO COMPLY WITH A COURT ORDER.**

. . . .

(2) ***Sanctions Sought in the District Where the Action Is Pending.***

(A) ***For Not Obeying a Discovery Order.***  If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the

court where the action is pending may issue further just orders.
They may include the following:

(i) directing that the matters embraced in the order or other
designated facts be taken as established for purposes of the action,
as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing
designated claims or defenses, or from introducing designated
matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order
except an order to submit to a physical or mental examination.

. . . .

(C) **_Payment of Expenses._**  Instead of or in addition to the orders
above, the court must order the disobedient party, the attorney
advising that party, or both to pay the reasonable expenses,
including attorney's fees, caused by the failure, unless the failure
was substantially justified or other circumstances make an award
of expenses unjust.

The only remaining issue raised in the _Sanctions Motion_ concerns

Pavarini's right to a monetary award for its reasonable legal fees and expenses.

Pavarini has provided the contemporaneous time records of its outside counsel,

Barton Barton & Plotkin LLP ("Barton"), for the period April 2, 2013 through

November 29, 2013, and highlighted in yellow those entries that pertain to its

request.  (_See Letter from Eric W. Sleeper, Esq. to the Court_, dated Dec. 30,

2013, at Tab 2 (covering Oct. 1, 2013 through Nov. 29, 2013); _Affirmation in_

_Support of Pavarini McGovern, LLC's Motion for Sanctions Against Waterscape_

_Resort LLC for Failure to Produce Documents and Comply With Court Directives_

_and for Spoliation of Evidence_, dated Nov. 15, 2013, at Ex. 11 (covering Apr. 2,

2013 through Sept. 30, 2013) (ECF Doc. # 110).)  The firm's top billing rate for

Mr. Sleeper, $400 per hour, is reasonable as are the lesser billing rates charged

for the work of associates and paralegals.

When a Court grants a motion to compel discovery or concludes that a

party has disobeyed a discovery order it must require the disobedient party or

its attorney to pay the reasonable expenses, including, including attorney's

fees, caused by the failure, unless the failure was substantially justified or

other circumstances make an award of expenses unjust.  In calculating

reasonable fees under Rule 37, courts traditionally employ the lodestar method

which multiplies the number of hours reasonably expended by the reasonable

hourly rate.  *New York State NOW v. Cuomo,* No. 93 Civ. 7146 (RLC), 1996 WL

689404, at *1 (S.D.N.Y. Nov. 26, 1996); *AFP Imaging Corp. v. Philips Medizin*

*Systems*, No. 92 Civ. 6211 (LMM), 1994 WL 698322, at *1 (S.D.N.Y. Dec 13,

1994); Monaghan *v. SZS 33 Assocs., L.P.,* 154 F.R.D. 78, 83 (S.D.N.Y.1994).

Under the fee-shifting statutes, there is "[a] strong presumption that the

lodestar figure—the product of reasonable hours times a reasonable rate—

represents a 'reasonable' fee." *Pennsylvania v. Del. Valley Citizens' Council for*

*Clean Air,* 478 U.S. 546, 565 (1986); *accord Blum v. Stenson,* 465 U.S. 886, 897

(1984) ("When . . . the applicant for a fee has carried his burden of showing

that the claimed rate and number of hours are reasonable, the resulting

product is presumed to be the reasonable fee . . . .").

The party seeking fees must establish its fees usually through contemporaneous time records, *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1265 (2d Cir. 1987) ("The burden is on counsel to keep and present records from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required; where adequate contemporaneous records have not been kept, the court should not award the full amount requested."), and the disobedient party bears the burden of proving that its failure was substantially justified or the imposition of monetary sanctions would be unjust.  *Poliquin v. Garden Way, Inc.*, 154 F.R.D. 29, 31 (D. Me. 1994).  The amount of the sanction should not exceed the expenses that are reasonably attributable to the violation. *Turnbull v. Wilcken*, 893 F.2d 256, 259 (10th Cir. 1990)( "[I]n the absence of a finding of bad faith, there must be a sufficient nexus between noncompliance with the rules and the amount of fees and expenses awarded as a sanction.  The rules, by their terms, limit assessments thereunder for the fees and expenses of the adverse party resulting from noncompliance."); *Cobell v. Babbitt,* 188 F.R.D. 122, 127 (D.D.C. 1999) ("A near 'but for' relationship must exist between the Rule 37 violation and the activity for which fees and expenses are awarded.")

Although Waterscape argues that Pavarini is not entitled to any legal fees or expenses, it has not taken issue with any of Barton's time records.  The Court nevertheless examined the records submitted by Barton, and as discussed below, made its own determination of the reasonableness of and the necessity for those services.

24

**B.**    **Fees and Expenses Relating to the *Motion to Compel***

A motion to compel discovery under Rule 37(a) must include a certification that the movant has conferred or attempted to confer in good faith with the person or party from whom disclosure is sought in an effort to obtain discovery without court action.  FED. R. CIV. P. 37(a)(1); *accord* BANKR. S.D.N.Y.R. 7007-1(a).  Furthermore, the Court will not hear a discovery-related motion "unless counsel for the moving party first requests an informal conference with the Court and either the request has been denied or the discovery dispute has not been resolved as a consequence of the conference." BANKR. S.D.N.Y.R. 7007-1(b).[16]  These requirements are designed to facilitate informal resolution of discovery disputes and avoid the time and expense of extensive motion practice.

The Court denied Pavarini's motion to compel from the bench on May 29, 2013.  Pavarini had filed the *Motion to Compel* only four days after the date of production called for in the *Second Request* and after rejecting the request by Mr. Medina, Waterscape's new counsel, for a two-week extension.  The *Motion to Compel*, signed by Pavarini's counsel, stated that "he contacted counsel to Waterscape concerning Waterscape's failure to comply and in a good faith effort to avoid court action, albeit hesitantly in light of the prior disclosure and discovery disputes with Waterscape and the fact that they were rarely resolved without court intervention."  (*Motion to Compel* at ¶ 17.)  But the parties never

---

[16]    The Court's Local Rule is adapted from Rule 37.2 of the Local District Court Rules.

discussed the merits of the *Second Request*, Mr. Sleeper summarily dismissed

Mr. Medina's request for a brief extension, and his certification that they had

unsuccessfully conferred in a good faith effort to resolve the discovery dispute

must be taken with a grain of salt.

Furthermore, Pavarini never requested a discovery conference with the

Court. Had it done so, it would have achieved the same result with a one

paragraph letter that it did with the *Motion to Compel*—a direction by the Court

to meet and confer and a subsequent discovery conference. According to

Barton's time records for this period, Pavarini seeks compensation for legal fees

in the sum of $14,400.00 incurred between May 1, 2013 and May 29, 2013,

the date of the hearing, for Barton's services related to the *Motion to Compel*.

In light of Pavarini's failure to comply with the conditions to the

prosecution of the *Motion to Compel*, the lack of necessity for a formal motion

and the denial of the motion, the Court declines to award any monetary

compensation for attorney's fees or expenses incurred during this period.

## C.    The Period May 29, 2013 through July 30, 2013

In the course of the ensuing meet and confer between the parties and

then with the Court on June 11, 2013, Pavarini withdrew three requests in the

*Second Request*, reduced the relevant time frame and acknowledged that some

of the other requests were duplicative. After the scope of the *Second Request*

was modified, the Court established deadlines for discovery.

26

Waterscape thereafter produced at least six boxes of documents.  The quality of this production became the source of endless dispute.  Pavarini has maintained that the first five boxes consisted of nothing more than copies of its own requisitions.  Waterscape argues that Pavarini didn't even take the time to look at the production.

The record on this motion undercuts Pavarini's position.  Ms. Mercado testified at her deposition that Waterscape's own copy of the requisition requests included handwritten notations indicating the disposition of the funded Draw Requests, and why Waterscape did not pay Pavarini's entire requisition.  Waterscape has provided over 300 pages from the five boxes, and some of the pages include handwritten notations obviously made by a Waterscape representative approving payment of requisitions, (*see e.g., Affidavit of Solly Assa*, sworn to Apr. 14, 2014 (ECF Doc # 165, Ex. B, at Bates no. WATER0009706, WATER0009711, WATER0009728, WATER0009846, WATER0009847), as well as internal Waterscape emails.  (*See, e.g., id.* at WATER0010000, WATER0011243, WATER0008866.)  It strains credulity to suggest that these internal Waterscape documents were included in the requisitions turned over by Pavarini to Waterscape, and Pavarini should have spent more time reviewing the documents in the five boxes.  Waterscape also produced Box No. 6, which included records relating to schedule of payments in Exhibit G to the *Verified Statement*.  We will return to Box No. 6 shortly.

Between May 29, 2013, and July 30, 2013, Barton's time records indicate that it expended $5,080.00 in time dealing with discovery issues. During this period, however, there was no pending motion to compel discovery and no outstanding discovery order. Furthermore, the Court and the parties pared Pavarini's *Second Request*, and Waterscape produced a substantial number of documents. Accordingly, the Court declines to award a compensatory monetary sanction relating to attorneys' fees and legal expenses for the services expended by Barton addressing discovery issues during this period.

**D.    The Discovery Order**

The Court continued to conduct conferences relating to the discovery disputes between the parties, and at a chambers conference held on July 30, 2013, issued a verbal order compelling discovery (the "*Discovery Order*"). The terms of the *Discovery Order* are reflected in the letters exchanged between counsel during early August and discussed above. Among other things, Waterscape was required to produce all of the documents responsive to Items A, B and C (the backup and other documents relating to the general ledger transactions) by August 16, 2013. Waterscape was further directed to provide an affidavit from Mr. Assa to the extent it contended it lacked responsive documents, and was advised that it would be precluded from using any documents it failed to produce.

28

Although no motion was pending, and the *Discovery Order* was verbal rather than written, it was nonetheless an order for the purpose of Rule 37(b) of the Federal Rules of Civil Procedure.  A verbal order will serve as the predicate for discovery sanctions under Rule 37(b) if (1) the party to whom it was directed had adequate opportunity to argue that the discovery should not be compelled, and (2) the verbal order gave clear notice of what was required. 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 37.42[3], at 37-68 to 37-69 (3d ed. 2014) ("MOORE'S FEDERAL PRACTICE"); *see Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*, 663 F.2d 371, 388 (2d Cir. 1981)("The fact that the March 22 order was oral rather than written, and that it was not entered pursuant to a formal written Rule 37(a) motion, does not deprive it of any of its binding force and effect."); *Jones v. Uris Sales Corp.*, 373 F.2d 644, 647-48 (2d Cir. 1967) (Friendly, J.) (disregard of a clear oral direction by a judge during a chambers conference to comply with a subpoena justified an award of sanctions under Rule 37(b)); *cf. Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 472 (7th Cir. 1984) ("Although a motion to compel usually precedes the imposition of Rule 37(b) sanctions, a formal motion is not always necessary.  In general, where a party has received adequate notice that certain discovery proceedings are to occur by a specific date, and that party fails to comply, a court may impose sanctions without a formal motion to compel the discovery from the opposing party.").

The July 30 conference was one of an ongoing series of discovery conferences.  At the conference, the parties and the Court extensively reviewed

the issues with input from Waterscape.  Unlike the June 11 conference where the Court merely fixed deadlines to comply with the revised discovery requests, the Court directed Waterscape on July 30, 2013 to produce the documents or confirm through Mr. Assa that it could not, and stated the consequences for noncompliance.  The Court's direction was clear and unambiguous, and Waterscape understood that the Court was issuing a direction; its letter recounting the July 30 conference referred to the Court's "instructions."  (*Letter from Eric S. Medina, Esq. to Eric W. Sleeper, Esq. & Daniel H. Crow, Esq.*, dated Aug. 9, 2013 (ECF Doc. # 94).)

Waterscape failed to comply with the *Discovery Order* in two respects.  First, it did not produce any documents responsive to Items A, B and C by August 16, 2013.  Instead, it took the position that it had produced all of the responsive documents in its custody or control, but subsequent events revealed a glaring omission; Waterscape had apparently never conducted a search of its electronically stored information, and as a result, failed to produce its QuickBooks files in accordance with the *Discovery Order*.[17]

Waterscape has taken the position that the QuickBooks files contain the identical information found in the general ledger that was previously given to Pavarini (*i.e.,* "no harm, no foul").  The testimony of Mr. Zimmerman and Ms.

---

[17]    Waterscape eventually offered to produce the QuickBooks files after the Court had entered the *Preclusion Order*, but Pavarini declined the offer.  Presumably, it did not wish to reopen discovery and face the possibility that the *Preclusion Order* might be modified allowing Waterscape to use the QuickBooks files at trial.

Mercado demonstrate the inaccuracy of this contention.  In particular, Ms. Mercado testified that the QuickBooks files included accounting journals containing journal entries with descriptions of the transactions that did not appear in the general ledger, the bank reconciliations and intercompany reconciliations, the check register and the reasons for payments to or credits for the benefit of Waterscape's affiliated entities.  In the course of these proceedings, the Court has received several versions of the general ledger and none of these versions contain the information that Ms. Mercado described.

Waterscape also contends that Pavarini never specifically asked for the QuickBooks files, but this contention also lacks merit.  Although Pavarini requested many specific documents, it also requested categories of documents.  Request No. 5(a) in the *Second Request*, repeated as Item A, asked for all documents relating to the payments and receipts depicted in the general ledger.  The QuickBooks files were obviously responsive to this request.

Second, Mr. Assa did not provide his affidavit by August 16.  In fact, he did not provide it until approximately two months later and only after more conferences, more letters and another motion to compel by Pavarini.  Moreover, the affidavit was wrong because it stated that Waterscape did not have any more responsive documents when, in fact, it had never produced the QuickBooks files.

Pavarini incurred legal expenses, including attorneys' fees, as a result of Waterscape's failure to comply with the *Discovery Order* that, through

Pavarini's efforts, culminated in the disclosure of the QuickBooks files. Because no disobedience occurred before August 16, 2013, I decline to award compensatory monetary sanctions against Waterscape for the period August 1, 2013 through August 16, 2013.[18]

Between August 17, 2013 and October 7, 2013, Pavarini incurred $22,992.00 in legal fees. The Court has examined Barton's time entries, and concludes that the award must be reduced. First, a few of the entries during this period relate to work done solely in connection with Waterscape's request to stay the adversary proceedings or Waterscape's own discovery demands.[19] Pavarini is not entitled to discovery sanctions in connection with these services because they were independent of Waterscape's disobedience of the *Discover Order*.[20]

Second, other time entries included non-compensable services that were block billed or "lumped" with compensable work directly related to

---

[18]    According to Barton's time records, it billed $5,140.00 in time during that approximate two week period.

[19]    *See e.g.*, 8/29/13 (Drafted correspondence to Joel and Dan concerning the discussion had with E. Medina regarding PMG's responses to WR's document requests and follow up on the same ($80.00)); 10/3/2013 (Research cases per request of E. Sleeper; summarize findings related to WR's latest stay request and potential sanctions and communicate with E. Sleeper re same ($382.50).)

[20]    The compensable services nevertheless include the prosecution of objections to the *Motion to Quash*. A court may impose compensatory sanctions for expenses incurred in connection with the frivolous protraction of proceedings. 7 MOORE'S FEDERAL PRACTICE § 37.51[9], at 37-113. Waterscape sought to quash Pavarini's bank subpoenas directed at Waterscape's own banks on privacy and relevancy grounds even though Waterscape claimed it had produced the same documents without any understanding of confidentiality. The *Motion to Quash* was frivolous in this regard, and was denied summarily from the bench.

Waterscape's disobedience of the July 30 Order.[21]  Block billing or lumping, a
timekeeping practice that involves including multiple services in a single,
aggregated time entry without any breakdown of the time spent on each
service, complicates a court's efforts "to gauge the reasonableness of time
expended on each activity."  *Ass'n of Holocaust Victims for Restitution of
Artwork & Masterpieces v. Bank of Australia Creditanstalt*, No. 04 Civ. 3600
(SWK), 2005 WL 3099592, at *5-6, *5 n.9 (S.D.N.Y. Nov. 17, 2005); *accord LV v.
New York City Dep't of Educ.*, 700 F. Supp. 2d 510, 525 (S.D.N.Y.  2010)
("[B]lock-billing can make it 'exceedingly difficult for courts to assess the
reasonableness of the hours billed.'  In such circumstances courts have found
it appropriate to cut hours across the board by some percentage.") (internal
citations omitted); *Williams v. New York City Hous. Auth.*, 975 F. Supp. 317,
327 (S.D.N.Y. 1997) ("Fee applicants should not lump several services or tasks
into one time sheet entry because it is then difficult, if not impossible, for a
court to determine the reasonableness of the time spent on each of the
individual services or tasks provided . . . .  It is not the court's job to decipher

---

[21]      *See, e.g.*, 9/13/13 (Finalize and forward correspondence to E. Medina regarding no stay
of discovery, the upcoming depositions, the need for his client to produce documents no later
than next Tuesday and related ($80.00)); 10/1/13 (Completed remaining analysis/research
with respect to WR's motion to quash and for a stay of proceedings, as well as PMG's cross
motion to compel and for sanctions with respect to WR's ongoing failure to comply with PMG's
discovery requests and flagrant non-compliance ($760.00); 10/1/13 (Continued work on,
finalized and had filed and EWS served PMG's objections to WR's motion to quash and for a
stay of proceedings and PMG's cross motion to compel and for sanctions ($720.00)); 10/1/13
(Correspondence with Joel and with Dan regarding PMG's objections to WR's motion to quash
and to stay proceedings and PMG's cross motion and the finalization of the same and brief call
with Dan on the same ($120.00)) 10/3/13 (Research cases per request of E. Sleeper;
summarize findings related to WR's latest stay request and potential sanctions and
communicate with E. Sleeper re same ($382.50).)

time entries and guess how much time each activity took . . . .  It is the responsibility of the applicant to make separate time entries for each activity.'") (quoting *In re Poseidon Pools of Am., Inc.*, 180 B.R. 718, 731 (Bankr. E.D.N.Y. 1995) (citations omitted) (internal quotation marks omitted).

"[C]ourts have recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application [and] have endorsed percentage cuts as a practical means of trimming fat from a fee application." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983) (citations omitted).  To address problems like block billing and vagueness, courts routinely apply across the board reductions.  *United States Football League v. Nat'l Football League*, 887 F.2d 408, 415 (2d Cir. 1989) (affirming across the board reduction for vague time entries); *Colon v. City of New York*, Nos. 09 CV 0008 (JBW), 2012 WL 691544, at *21 (E.D.N.Y. Feb. 9, 2012) (collecting cases); *Reiter v. Metro. Transp. Auth. of the State of New York*, No. 01 Civ. 2762 (GWG), 2007 WL 2775144, at *15 (S.D.N.Y. Sept. 27, 2007) (collecting cases); *Klimbach v. Spherion Corp.*, 467 F. Supp. 2d 323, 332 (W.D.N.Y. 2006) (applying a 10% across the board reduction for vague billing entries); *Ass'n of Holocaust Victims*, 2005 WL 3099592, at *7 (reducing lodestar amount by 25% to account for instances of block billing, vagueness and excess).  In light of the billing of the block billing and the billing of non-compensable services, the Court will reduce the monetary sanction by 10% for the fees incurred during this period, and award $20,692.80.  The Court will

apply the same percentage reduction to the expenses accrued during this approximate period ($159.02), and award $143.12.

Pavarini is entitled to all of the fees and disbursements incurred on and after October 8, 2013 through November 29, 2013.  The parties attended a conference on October 8, 2013, at which Pavarini advised the Court of the possibility that Waterscape had spoliated evidence, and the Court suggested that Pavarini make the *Spoliation Motion*.  Between October 8, 2013 and November 29, 2013, the last date to which Barton's time records speak, Pavarini incurred legal fees preparing for the October 8 hearing or preparing and then prosecuting the *Sanctions Motion*.  All of these services were directly related to Waterscape's disobedience of the *Discovery Order*.  The time charges amount to $13,941.15, and the corresponding expenses total the sum of $376.00 in October and $581.33 in November.

## E.    Spoliation

Pavarini also seeks sanctions on the ground that Waterscape spoliated evidence; Mr. Assa admitted that some documents were lost when Waterscape moved from one premises to another.  "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Wets v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).  A court may impose sanctions under Rule 37(b) against a spoliator, but even in the absence of a court order, it may punish the spoliator under its inherent

35

powers.  *Id.*  Whether a party should be sanctioned for spoliating evidence is a

three part inquiry: (1) did the party have a duty to preserve, (2) did the party

have a culpable state of mind, and (3) was the spoliated evidence relevant to

the pending litigation.  *Zublake v. UBS Warburg LLC*, 220 F.R.D. 212, 216

(S.D.N.Y. 2003) (citing *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107-12 (2d

Cir. 2001)).

Pavarini has satisfied the first two prongs.  "The obligation to preserve

evidence arises when the party has notice that the evidence is relevant to

litigation or when a party should have known that the evidence may be relevant

to future litigation."  *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir.

2001), *cert. denied*, 534 U.S. 891 (2001); *accord Zublake*, 220 F.R.D. at 216.

Pavarini and Waterscape had been involved in litigation before the DRB and in

state court even prior to the commencement of the chapter 11 case, and the

duty to preserve was triggered no later than June 2011 when this adversary

proceeding was commenced.  Waterscape moved on July 20, 2012, over one

year later, (*Affirmation of Eric S. Medina*, dated Dec. 4, 2013, Ex. J, at 40:3-8

(ECF Doc. # 114), and lost the evidence after the duty to preserve was

triggered.

In addition, Waterscape acted with a "culpable state of mind."  While

there is no evidence that Waterscape acted intentionally or in bad faith, a

culpable state of mind includes ordinary negligence.  *Residential Funding Corp.*

*v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002).  Here, Waterscape lost

36

documents during a move due to its negligent failure to safeguard the documents against loss.

The third prong raises the more difficult issue.  Where, as here, the spoliating party was merely negligent, the innocent party must prove both relevance and prejudice in order to justify a severe sanction.  *Byrnie*, 243 F.3d at 108; *Pension Committee of the University of Montreal Pension Plan v. Banc of Am. Secs., LLC*, 685 F. Supp. 2d 456, 468 (S.D.N.Y. 2010).  Pavarini has proved neither.  There is no basis to conclude that the spoliated documents were relevant to the litigation pending at the time, or that they do not exist in another, electronic format.  Moreover, Ms. Mercado testified that none of her accounting records were lost, and the Quick Books files appear to be intact.  Accordingly, Pavarini has failed to demonstrate that it is entitled to sanctions based on spoliation.

Even if Pavarini showed that it was entitled to sanctions for spoliation of evidence, no further sanctions would be warranted.  The *Preclusion Order* prevented Waterscape from offering at trial any documents in its custody or control that it failed to produce in discovery.  In addition, it precluded Waterscape from arguing that wholly undocumented payments appearing in the general ledger and made between July 1, 2008 and November 30, 2008 were trust fund expenditures.  The Court would not be inclined to impose any further non-monetary sanctions.

Furthermore, this adversary proceeding is essentially over, and at this juncture, non-monetary sanctions would not serve any purpose. Waterscape has paid Pavarini in excess of $10 million to satisfy the Final Accounting, and Pavarini has recovered everything that it is entitled to under the CMA. The Final Accounting is still subject to judicial review, but neither party has as yet sought judicial review, and if judicial review ensues, the focus will be the findings and conclusions in the Final Accounting rather than the claims in this adversary proceeding. As matters stand and with the possible exception of its punitive damage claim, Pavarini has no unresolved claims against Waterscape in this litigation.

Finally, the Court has already awarded monetary sanctions relating to Waterscape's disobedience of the *Discovery Order*, and any additional monetary sanction would duplicate the existing award.

The Court has considered the remaining arguments made by the parties and concludes that they lack merit. Settle order on notice.

Dated:       New York, New York
             January 21, 2015

                                  /s/ *Stuart M. Bernstein*
                                  STUART M. BERNSTEIN
                                  United States Bankruptcy Judge